**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ERIC PODWALL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WILLIAM "SMOKEY" ROBINSON, JR.,<br><br>　　　　Defendants. | Case № 2:16-CV-06088-ODW (AJWx)<br><br>**ORDER DENYING IN PART, AND GRANTING IN PART, DEFENDANT'S MOTION TO DISMISS [37]** |

## I.　INTRODUCTION

In this breach of contract action, Plaintiff Eric Podwall seeks to recover commissions from Defendant William "Smokey" Robinson that Podwall claims he earned while acting under a management contract as Robinson's personal manager. Robinson moves to dismiss Podwall's claims on the grounds that Podwall failed to state a claim on which he can recover. For the reasons discussed below, the Court **DENIES in part, and GRANTS in part,** Defendant's Motion to Dismiss (the "Motion").[1]

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Robinson is a well-known musician who has been in the music business for decades. (Compl. ¶¶ 1, 9, ECF No. 1-1.) Podwall is a talent and music manager with more than twenty years of experience in the entertainment industry, but he is not a licensed talent agent. (*Id.* ¶ 8, Ex. 1 ¶ 3.)

On September 12, 2012, Podwall and Robinson entered into a written agreement (the "Agreement") that established Podwall as Robinson's "personal manager." (*Id.* ¶ 10, Ex. 1.) The Agreement provided that Podwall would receive "[t]en percent of gross compensation derived from all products of [Robinson's] services initially rendered or created from and after" the Agreement's inception. (*Id.* Ex. 1 ¶ 2.) The Agreement limited Podwall's commission on Robinson's live performances to those booked after the date of the Agreement and performed after June 1, 2013. (*Id.*) Among other things, the Agreement explicitly clarified: "[f]or avoidance of doubt, there will be no commission at any time on any royalties earned for products exploited prior to the term of this agreement." (*Id.*)

Podwall alleges he revitalized Robinson's career by procuring business opportunities, providing career advice, and taking care of Robinson's business arrangements. (*Id.* ¶ 12.) For example, he secured a recording agreement with Verve Records to record an album of duets with other popular artists (the "Verve Records Album"). (*Id.* ¶ 13.) Additionally, he secured a favorable royalties collection agreement in 2014 with Global Music Rights ("GMR Deal") on Robinson's behalf. (*Id.* ¶¶ 16–21.) Podwall claims that Robinson has refused to pay Podwall's commissions, on these deals specifically and on revenue generated during the Agreement's term from Robinson's touring, performing, and recording. (*Id.* ¶¶ 15, 21, 25, 28.)

---

[2] All factual references derive from Podwall's Complaint, unless otherwise noted, and are accepted as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On July 15, 2016, Podwall filed a Complaint against Robinson alleging breach of contract, among other things, and seeking unpaid commissions pursuant to the Agreement. (Compl. ¶¶ 24–29, 30–44.) On October 20, 2016, the Court denied Robinson's first motion to dismiss and stayed this case to allow Podwall to petition the Labor Commission for a determination on whether Podwall violated the Talent Agency Act ("TAA") in acting as Robinson's personal manager without being a licensed talent agent. (Order Denying Def.'s Mot. to Dismiss and Staying the Case, ECF No. 19.)

After an administrative hearing and review of the evidence, on June 22, 2018, the Labor Commissioner issued its Determination of Controversy. (*See* Request to Lift Stay, Ex. A (Cal. Labor Comm'r Determination of Controversy ("CLC Op.")), ECF No. 34.) The Labor Commissioner made numerous findings of fact, including that the William Morris Agency ("WME") had been Robinson's "licensed talent agent" for at least ten years and had procured hundreds of performance events for Robinson. (CLC Op. 2, 4.) The Labor Commissioner found that Podwall's involvement in procuring four specific performance events violated the TAA because Podwall had acted as a talent agent without a license. (*Id.* at 11–14.) After severing those four events, the Labor Commissioner concluded that the Agreement was not invalid or unenforceable under the Talent Agencies Act. (*Id.* at 19.) Finally, the Labor Commissioner concluded that neither the Verve Records Album nor the GMR Deal were subject to the TAA, so Podwall did not need a talent agent license to procure those agreements and had not violated the TAA with respect to them. (*Id.*)

Following the Labor Commissioner's Determination, the Court lifted the stay upon Robinson's request. (Order on Request to Lift Stay, ECF No. 35.) Robinson has renewed his motion to dismiss ("Motion"), this time seeking dismissal of all Podwall's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss ("Mot."), ECF No. 37.) Podwall opposes. (Opp'n to Mot. ("Opp'n"), ECF

No. 38.) Both parties rely on the Labor Commissioner's Determination to support or oppose Robinson's Motion. (*See generally* Mot.; Opp'n.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A court may also dismiss a complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). These factual allegations must provide fair notice and enable the opposing party to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court is generally limited to the pleadings in ruling on a Rule 12(b)(6) motion but may consider documents attached to the complaint without converting a motion to dismiss into one for summary judgment. *See Lee*, 250 F.3d at 688.

When a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear "the complaint could not be saved by any amendment." *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.   DISCUSSION

Robinson moves to dismiss on the grounds that Podwall fails to state a claim upon which he can recover, and specifically refutes Podwall's claims for commissions regarding touring revenue, the Verve Records Album, and the GMR Deal.

### A.   Local Rule 7-3

As a preliminary matter, Podwall opposes Robinson's motion, in part, because Robinson failed to meet and confer as required by Local Rule 7-3. (Opp'n 6–7.) Robinson admits he failed to meet and confer in advance of the instant motion. (*See* Reply in Support of Renewed Mot. to Dismiss 1 n.1, ECF No. 39.)

Local Rule 7-3 requires counsel or parties contemplating motion practice to "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and *any potential resolution*." C.D. Cal. L.R. 7-3 (emphasis added). The purpose of Local Rule 7-3 is to attempt to resolve the issues necessitating motion practice. *See id.* It is within the Court's discretion to refuse to consider a motion based on a party's noncompliance with Local Rule 7-3. *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015). However, failure to comply with Local Rule 7-3 "does not automatically require the denial of a party's motion." *Id.*

Robinson attempts to rationalize his failure to comply with the Court's rules first by arguing that the parties' conference two years ago, concerning Robinson's prior motion, somehow satisfies the current requirement, and second that Podwall has suffered no prejudice from the present Motion. A conference on a previous motion, two years in the past, *does not* satisfy the present requirement to meet and confer. Further, the purpose of the rule is not only to avoid prejudicing the opposing party, but

also to streamline or avoid motion practice. As is apparent from the papers, the present motion would have benefitted from the required conference. Although it is within the Court's discretion to deny Robinson's Motion for failure to comply with Local Rule 7-3, it declines to do so as the matter will benefit from a resolution on the merits. However, the parties are cautioned that **any further failure to strictly comply with Local Rule 7-3 will result in denial of the motion or sanctions**.

B. "Touring Revenue"

Robinson argues that Podwall cannot recover commissions from Robinson's performances or touring revenue because Podwall failed to plead any allegations as to such performances, and even if he had, his conduct violated the TAA and such unlawful conduct should bar Podwall's recovery. (Mot. 5.) Podwall opposes, noting that the Labor Commissioner found Podwall had violated the TAA as to only four performances out of hundreds, so he is entitled under the Agreement to recover a commission for revenue derived from all other engagements booked after the Agreement's inception and performed after June 1, 2013. (Opp'n 8–9.)

In his Complaint, Podwall does not allege that Robinson engaged in any performances, live or otherwise, during the term of the Agreement or specifically after June 1, 2013. Podwall's only allegations that come close are vague references to touring. (Compl. ¶¶ 2 ("Podwall . . . revived Robinson's recording and touring career"), 14 ("Podwall presented Robinson with innovative methods to increase the profitability of his touring revenue"), 15 ("Robinson has refused to pay Podwall commissions from Robinson's touring, performing, or recording activities"), 27 ("Robinson has received compensation from his recording, performing, and touring activities").) None of these vague references provides sufficient factual support for the proposition that Robinson toured or performed while Podwall acted as his personal manager under the Agreement, such that Podwall may recover commissions on the resulting revenue. Consequently, Podwall has failed to state a claim for relief as to such engagements.

Podwall argues that the Labor Commissioner found Robinson had hundreds of performance events during the term of the Agreement. (Opp'n 8.) He notes that the Labor Commissioner, after an opportunity to pass on these engagements, found only four violated the TAA. (*Id.* (citing CLC Op. 17).) Proper allegations as to Robinson's other engagements during the term of the Agreement may support Podwall's claims for commission. Accordingly, the Court finds that amendment as to allegations regarding Robinson's engagements during the term of the Agreement would not be futile.

Therefore, the Court **GRANTS** Robinson's Motion as to Podwall's claims for commissions on Robinson's engagement revenue. Podwall **MAY AMEND** his Complaint with respect to allegations of Robinson's engagements during the term of the Agreement. Should Podwall elect to amend, he must do so **within 30 days of the date of this Order**.

C. **The Verve Records Album**

Robinson argues that the Labor Commissioner found Podwall had received a commission for the Verve Records Album, so Podwall has no right to recover that same commission again. (Mot. 6.) Podwall counters that the Labor Commissioner made no finding that Robinson had paid the entire commission owed. (Opp'n 9–10.) He argues that although he may have received "a partial commission," Robinson has not paid Podwall the "required commission on all monies received." (*Id.* at 9.)

Through his Complaint, Podwall alleges that he was "instrumental in securing Robinson a recording agreement with Verve Records" and that Robinson has not paid commissions owed from "recording activities" as expressly agreed in the Agreement. (Compl. ¶¶ 13, 15.) The question of whether Robinson paid the full commission owed under the contract is not appropriate for resolution at this procedural stage. Podwall's allegations state a plausible claim for relief sufficient to survive a motion to dismiss.

Accordingly, the Court **DENIES** Robinson's Motion as to Podwall's claims for commissions on the Verve Records Album.

### D. The GMR Deal

Through his Complaint, Podwall alleges that he was instrumental to closing the GMR Deal and that Robinson refused to pay Podwall any commissions on it, as required by the Agreement. (Compl. ¶¶ 16–21, 25, 27.) Robinson argues that Podwall cannot recover commissions based on the GMR Deal because the express terms of the Agreement exclude any such right.[3] (Mot. 7.) Podwall counters that Robinson misreads the relevant provision of the Agreement and that the plain language does not expressly exclude the commissions he seeks. (Opp'n 10–11.)

Where "contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."[4] *Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006); *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "The words of a contract are to be understood in their ordinary and popular sense," unless used in a legal or technical sense or assigned a special meaning. Cal. Civ. Code § 1644.

As a preliminary matter, the first line of the Agreement's "Commission" provision states that Podwall will receive "[t]en percent of gross compensation derived from all products of [Robinson's] services *initially rendered or created from and after*" the date of inception. (Compl., Ex. 1 ¶ 2 (emphasis added).) A plain reading of the first line appears to provide that Podwall's commissions would be limited to Robinson's products "rendered or created" after the Agreement, expressly excluding previously produced or recorded material. However, neither party

---

[3] Robinson relies on the Labor Commissioner's interpretation and analysis of the GMR Deal, but neither the Labor Commissioner's Determination nor the GMR Deal are properly before this Court. Further, those documents are not appropriate for the Court's consideration on a Motion to Dismiss.

[4] The Court applies California law to the Agreement, as Podwall alleges that the Agreement was entered into and required performance in California. *See Getlin v. Md. Cas. Co.*, 196 F.2d 249, 250 (9th Cir. 1952) (stating that a contract is generally "governed by the law of the place of contracting"). Additionally, Robinson removed this matter to federal court on the basis of diversity subject matter jurisdiction. (Notice of Removal 3, ECF No. 1.) A federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

8

addresses this language or its meaning in their motion papers. Consequently, the Court considers only the parties' arguments as to the specific language disputed.

The parties dispute the Commission provision language: "[f]or avoidance of doubt, there will be no commission at any time on any royalties earned for products *exploited prior to* the term of this agreement . . . ." (*Id.* (emphasis added).) Podwall makes much of the distinction between when a song was created and when it was exploited. He contends that he should be entitled to royalties collected on songs *recorded before* the Agreement because they were *exploited during* the Agreement. A plain reading of this provision supports Podwall's contention. The disputed language clearly excludes commissions on products exploited prior to the term of the Agreement; it does not exclude commissions on products exploited during the term of the Agreement.

Accordingly, the Court **DENIES** Robinson's Motion as to Podwall's claims for commissions on the GMR Deal.

## V. CONCLUSION

For the forgoing reasons, the Court **DENIES in part, and GRANTS in part,** Robinson's Motion to Dismiss. (ECF No. 37.) Podwall may **AMEND** his Complaint **within 30 days** from the date of this Order, as described above.

**IT IS SO ORDERED.**

November 29, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**