# United States District Court
# Central District of California

| | |
|---|---|
| ERIC PODWALL,<br><br>             Plaintiff,<br><br>    v.<br><br>WILLIAM "SMOKEY" ROBINSON, JR.,<br><br>             Defendants. | Case № 2:16-CV-06088-ODW (AJWx)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS [53]** |

## I.    INTRODUCTION

In this breach of contract action, Plaintiff Eric Podwall seeks to recover commissions from Defendant William "Smokey" Robinson, Jr. that Podwall claims he earned under a personal management contract. Robinson moves to dismiss certain claims in Podwall's First Amended Complaint ("FAC") on the grounds that Podwall failed to state a claim on which he can recover. For the reasons discussed below, the Court **DENIES in part and GRANTS in part** Defendant's Motion to Dismiss (the "Motion").[1]

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Robinson is a well-known musician who has been in the music business for decades. (FAC ¶ 1, ECF No. 52.) Podwall is a talent and music manager with more than twenty years of experience in the entertainment industry, but he is not a licensed talent agent. (*Id.* ¶ 7, Ex. 1 ¶ 3.)

On September 12, 2012, Podwall and Robinson entered into a written agreement (the "Agreement") that established Podwall as Robinson's "personal manager." (*Id.* ¶ 8, Ex. 1.) The Agreement provided that Podwall would receive "[t]en percent of gross compensation derived from all products of [Robinson's] services initially rendered or created from and after" the Agreement's inception. (*Id.* Ex. 1, ¶ 2.) The Agreement limited Podwall's commission on Robinson's live performances to those booked after the date of the Agreement and performed after June 1, 2013. (*Id.*) Among other things, the Agreement explicitly clarified: "[f]or avoidance of doubt, there will be no commission at any time on any royalties earned for products exploited prior to the term of this agreement . . . ." (*Id.*)

Podwall alleges he revived Robinson's career by providing career advice, handling Robinson's business arrangements, and presenting "innovative methods to increase the profitability of his touring revenue." (*Id.* ¶¶ 10, 12.) As one example, he alleges he assisted in closing a favorable royalties collection agreement in 2014 with Global Music Rights ("GMR Royalties Deal") on Robinson's behalf. (*Id*. ¶¶ 16–21.) Podwall claims that Robinson has refused to pay Podwall's commissions on revenue generated during the Agreement's term from Robinson's touring, performance, and recording, as well as from the GMR Royalties Deal. (*Id.* ¶¶ 13, 15, 21, 27.)

On July 15, 2016, Podwall filed a Complaint against Robinson seeking unpaid commissions pursuant to the Agreement. (Compl., ECF No. 1-1.) On October 20,

---

[2] All factual references derive from Podwall's FAC, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2016, the Court denied Robinson's first motion to dismiss and stayed this case to allow Podwall to petition the Labor Commissioner for a determination on whether Podwall violated the Talent Agency Act ("TAA") in acting as Robinson's personal manager without being a licensed talent agent. (Order Denying Def.'s Mot. to Dismiss and Staying the Case, ECF No. 19.)

On June 22, 2018, the Labor Commissioner issued its Determination of Controversy. (*See* Req. for Judicial Notice ("RJN"), Ex. 6 (Cal. Labor Comm'r Determination of Controversy ("CLC Det.")), ECF No. 56-6.) The Labor Commissioner made numerous findings of fact, including that the William Morris Agency ("WME") had been Robinson's "licensed talent agent" for at least ten years and had procured hundreds of performance events for Robinson during the time Podwall served as Robinson's personal manager. (CLC Det. 2, 4, 17.) The Labor Commissioner found that Podwall was not required to obtain a talent agency license for certain agreements, including the GMR Royalties Deal, but that Podwall's involvement in procuring four specific performance events violated the TAA because Podwall had acted as a talent agent without a license with respect to those events. (*Id.* at 11–16, 19.) In determining whether to invalidate the Agreement because of the four violations, the Labor Commissioner concluded that the four violative engagements "are not representative of the hundreds of events [WME], not [Podwall], secured for [Robinson] during the three years [Podwall] served as personal manager." (*Id.* at 17.) After severing those four events, the Labor Commissioner concluded that the Agreement was not invalid or unenforceable under the TAA. (*Id.* at 19.)

Following the Labor Commissioner's Determination, the Court lifted the stay. (Order on Req. to Lift Stay, ECF No. 35.) The Court denied in part and granted in part Robinson's renewed motion to dismiss and granted Podwall thirty days to amend his Complaint, which he did on December 11, 2018. (Order, ECF No. 50; FAC.)

3

Robinson now moves to dismiss Podwall's FAC, arguing Podwall fails to state a claim with respect to his entitlement to commissions on Robinson's engagements and the GMR Royalties Deal. (Mot. to Dismiss FAC ("Mot."), ECF No. 53.)

### III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The factual allegations must provide "fair notice and enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court is generally limited to the pleadings in ruling on a Rule 12(b)(6) motion but may consider documents attached to the complaint or properly subject to judicial notice without converting a motion to dismiss into one for summary judgment. *See Lee*, 250 F.3d at 688–89.

### IV. REQUEST FOR JUDICIAL NOTICE

Podwall requests the Court take judicial notice of pleadings and briefing before the Labor Commissioner, the transcript of the administrative evidentiary hearing, and the Labor Commissioner's Determination of Controversy. (RJN 1, ECF No. 56.) Robinson does not oppose Podwall's request.

"[A] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Judicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)); *see also Tech. & Intellectual Prop. Strategies Grp. v. Fthenakis*, No. C 11-2373 MEJ, 2011 WL 3501690, at *7 n.2 (N.D. Cal. Aug. 10, 2011) (taking judicial notice of the California Labor Commissioner's notice of claim and conference and notice of completed investigation).

The Labor Commissioner's Determination of Controversy is a report of an administrative body, appropriate for judicial notice. The Court **GRANTS** Podwall's request for judicial notice of the Labor Commissioner's Determination of Controversy (RJN Ex. 6 (CLC Det.).) However, the Court **DENIES** Podwall's request for judicial notice as to all other exhibits, which are unnecessary to the outcome of this motion.

### V. DISCUSSION

Robinson moves to dismiss on the grounds that Podwall fails to state a claim upon which he can recover, and specifically refutes Podwall's claims for commissions on performance engagements and the GMR Royalties Deal.

**A. Federal Rules of Civil Procedure 12(g)**

As a preliminary matter, Podwall challenges Robinson's Motion as a procedurally improper serial motion under Federal Rules of Civil Procedure 12(g).

(Opp'n 11–12, ECF No. 55.)  "Rule 12(g) applies to situations in which a party files successive motions under Rule 12 for the sole purpose of delay."  *Davidson v. Countrywide Home Loans, Inc.*, No. 09-CV-2694-IEG JMA, 2011 WL 1157569, at *4 (S.D. Cal. Mar. 29, 2011) (internal quotation marks omitted).  Here, no evidence has been presented that Robinson filed the instant motion to delay proceedings or for any other improper motive.  Rather he has responded to Podwall's FAC and the Court's concerns as identified in the previous Order.  Further, even had Robinson brought successive motions, "the Court has discretion to consider the arguments to expedite a final disposition on the issue."  *Id.*

**B.     Engagements**

Podwall seeks to recover commissions on Robinson's engagements during the time Podwall served as Robinson's personal manager under the Agreement.  (FAC ¶¶ 14–15.)  Robinson argues Podwall may not recover such commissions because he failed to exhaust administrative remedies by obtaining a determination that he had not violated the TAA, specifically as to the hundreds of engagements identified for the first time in the FAC.  (Mot. 6.)  Podwall opposes, noting that the Labor Commissioner expressly found that Podwall had not procured hundreds of Robinson's performance engagements during Podwall's time as Robinson's personal manager.  (Opp'n 13–16, ECF No. 55.)  Thus, Podwall argues that he did in fact exhaust his administrative remedies.

Under California law, the Labor Commissioner is given exclusive original jurisdiction to hear controversies that colorably arise under the TAA.  Cal. Lab. Code § 1700.44; *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 981 n.2 (2008); *Styne v. Stevens*, 26 Cal. 4th 42, 59 (2001).  The term "colorable" is used in its "broadest sense."  *Styne*, 26 Cal. 4th at 59 n.10.  "The [TAA] specifies that '[i]n cases of *controversy* arising under this chapter, the parties involved *shall refer* the *matters in dispute* to the Labor Commissioner.'"  *Id.* at 54.  "[R]eference of disputes involving the [TAA] to the Commissioner is *mandatory*."  *Id.*  Such a referral is necessary, for

instance, when an artist-defendant raises the TAA as a defense to a breach of contract action such as this one. *See id.* at 60. However, the TAA "does not require any party to invoke the Commissioner's jurisdiction *before* such a controversy has arisen. The filing of a lawsuit may be the defendant's first inkling that such a controversy exists." *Id.* at 59–60.

The TAA requires anyone who solicits or procures employment or artistic engagements for artists to obtain a talent agency license. Cal. Lab. Code § 1700.5; *Marathon*, 42 Cal. 4th at 985. "[T]he TAA does not cover services such as personal management, but does cover managers . . . if they solicit and procure employment on behalf of artists." *Siegel v. Bradstreet*, No. CV 08-2480 CAS (SSx), 2008 WL 4195949, at *3 (C.D. Cal. Sept. 8, 2008); *see also Seigel v. Su*, No. 2:17-CV-07203-CAS (SSx), 2018 WL 1393984, at *1 (C.D. Cal. Mar. 16, 2018) ("[T]he TAA applies to a personal manager . . . if he 'solicits or procures employment for his artist-client.'"). "A manager can provide advisory and logistical support for tours without procuring or soliciting tour venues and performance opportunities for [artists]." *Lauwrier v. Garcia*, No. CV 12-07381-MMM (SHx), 2013 WL 11238497, at *8 (C.D. Cal. Mar. 8, 2013) (citing *Marathon*, 42 Cal. 4th at 980). Thus, a controversy may colorably arise requiring the Commissioner's determination where a manager's conduct crosses the line between advice and procurement. "The Commissioner's expertise in applying the Act is particularly significant in cases where, as here, the essence of the parties' dispute is whether services performed were by a talent agency for an artist." *Styne*, 26 Cal. 4th at 58; *see also Marathon*, 42 Cal. 4th at 988 ("The Labor Commissioner's views are entitled to substantial weight if not clearly erroneous.").

Although Podwall fails to allege any facts in his FAC regarding the administrative proceeding or the Labor Commissioner's findings, the Court takes judicial notice of the Labor Commissioner's Determination of Controversy. The Labor Commissioner concluded that Podwall did not procure (and thus did not violate

the TAA with respect to) hundreds of Robinson's engagements during Podwall's time as Robinson's personal manager. (*See* FAC; CLC Det. 17.) Podwall petitioned the Labor Commissioner to determine whether his personal management services provided to Robinson fell "within the scope of the TAA or jurisdiction of the Labor Commissioner." (CLC Det. 7.) After briefing and an evidentiary hearing, the Labor Commissioner found that Podwall's conduct violated the TAA with respect to four specific engagements, but that Podwall had not procured (and thus had not violated the TAA with respect to) hundreds of other engagements, which, instead were procured by Robinson's licensed talent agency, WME. (*See* CLC Det. 17 ("the overwhelming weight of the evidence offered by [Robinson] and [Podwall] alike demonstrate that the four engagements found to be in violation here are not representative of the hundreds of events [WME], not Podwall, secured for [Robinson] during the three years [Podwall] served as personal manager for [Robinson].").) Based in part on this finding, the Labor Commission concluded that severing the four illegal acts to preserve the Agreement furthered the interests of justice. (CLC Det. 16–18, 19.)

In his FAC, Podwall lists more than one hundred engagements during the relevant time period, but does not allege that WME procured the listed engagements. He also does not allege that the listed engagements are the same "hundreds of events" the Labor Commissioner concluded Podwall did not procure. However, construing the allegations in the light most favorable to Podwall, it is plausible at the pleadings stage that the newly identified engagements in Podwall's FAC are those the Labor Commissioner considered and found not violative.

Accordingly, Podwall has pleaded sufficient facts to state a claim for relief that is plausible on its face. The Court **DENIES** Robinson's Motion with respect Podwall's claim to recover commissions on engagements.

## C. The GMR Royalties Deal

Podwall seeks commissions on royalties earned via the GMR Royalties Deal. (FAC ¶¶ 16–21, 27.) Robinson argues that Podwall cannot recover such commissions because the GMR Royalties Deal is for royalties of *previously recorded* music and the plain and unambiguous terms of the Agreement exclude commissions on previously recorded material. (Mot. 9.) Podwall disagrees and contends that the proper interpretation of the commission provision does not exclude commissions on royalties earned on previously recorded music, or in the alternative, the language is ambiguous. (Opp'n 18–23.) Podwall contends that, at the very least, he is entitled to commission royalties on music recorded during the term of the Agreement. (*Id.* at 23.)

Where "contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006); *see also* Cal. Civ. Code § 1638. "The words of a contract are to be understood in their ordinary and popular sense," unless used in a legal or technical sense or assigned a special meaning. Cal. Civ. Code § 1644; *Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 752 (2017) ("[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning."). A court must review the agreement as a whole and ascertain the mutual intention of the parties as gathered from the four corners of the instrument. *Machado v. S. Pac. Transp. Co.*, 233 Cal. App. 3d 347, 352 (1991); *see also* Cal. Civ. Code §§ 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."), 1641 ("The whole of a contract is to be taken together, so as to give effect to every part."). Each word must be given force and effect to avoid interpretations that would render other provisions surplusage. *In re Crystal Props.*, 268 F.3d 743, 748 (9th Cir. 2001).

The Agreement includes a commission provision setting out the parameters of Podwall's entitlement to commission Robinson's earnings. (*See* FAC Ex. 1, ¶ 2.) As relevant to the GMR Royalties Deal, it provides that Podwall is entitled to

> [t]en percent of gross compensation derived from all products of your [Robinson's] services *initially rendered or created from and after the date* [of this agreement] . . . . For avoidance of doubt, there will be no commission at any time on any royalties earned for products exploited prior to the term of this agreement.

(*Id.* (emphasis added).)

Reading the provision as a whole and construing the words in their ordinary sense, the language is clear and unambiguous. "[P]roducts of [Robinson's] services" would logically include songs Robinson has recorded. The phrase "initially rendered or created from and after the date [of this agreement]" establishes a bright line date after which Podwall may commission newly rendered or created products. The phrase "[f]or avoidance of doubt" signals further clarification that commissions on royalties for products exploited before the Agreement are similarly excluded. When read as a whole in the ordinary sense, the plain language precludes commissions, including on royalties, for Robinson's previously recorded music.

The GMR Royalties Deal provides that GMR would collect copyright royalties on "permitted use of *previously recorded songs*." (CLC Det. 5, 15 (emphasis added).) *See Marathon*, 42 Cal. 4th at 988 ("The Labor Commissioner's views are entitled to substantial weight if not clearly erroneous."). As the Agreement expressly excludes commissions on previously recorded products, Podwall may not recover commissions on royalties earned via the GMR Royalties Deal.

Podwall attempts to create an ambiguity by arguing that the phrase "products of your services" actually means "the productive use of the song (or other copyrighted work)." (Opp'n 21–22.) He contends the "product" created or rendered is actually the productive or permitted use of the song, which occurred after the Agreement's term, allowing him to recover a commission. The Court disagrees. The language is plain and states "products," not "productive use" or "permitted use." Had the parties intended another meaning, they would have used other language. The Court declines

to read Podwall's post hoc preferred language into the Agreement to create the ambiguity Podwall seeks.

Reading the provision as a whole and construing the words in their ordinary sense, the language is clear and unambiguous. The GMR Royalties Deal is for royalties on previously recorded works, commissions on which the Agreement expressly excludes. As such, Podwall may not recover commissions on royalties earned via the GMR Royalties Deal. Accordingly, the Court **GRANTS** Robinson's Motion as to Podwall's claims for commissions on royalties collected from the GMR Royalties Deal.

### D. Leave to Amend

Podwall requests leave to amend in the event the Court grants Robinson's motion. (Opp'n 24.) Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, amendment would be futile. The Agreement is before the Court and "the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. The disputed provision's language is clear and explicit, and thus the plain meaning governs. Podwall had the opportunity to amend his Complaint following the administrative proceedings and subsequent motion practice to vigorously argue for his preferred construction in opposition to the instant Motion. However, the Court finds the disputed provision's language plain and unambiguous. Podwall has failed to persuade otherwise. Podwall has also failed to propose any

specific allegations for amendment that might alter this conclusion. Consequently, further amendment would be futile. Accordingly, the Court **GRANTS** Robinson's Motion as to Podwall's claims for commissions on royalties collected from the GMR Royalties Deal **WITHOUT** leave to amend.

### VI. CONCLUSION

For the forgoing reasons, the Court **DENIES in part, and GRANTS in part,** Robinson's Motion to Dismiss. (ECF No. 53.) As discussed above, the Court **DENIES** Robinson's Motion with respect Podwall's claim to recover commissions on engagements, and **GRANTS** Robinson's Motion as to Podwall's claims for commissions on royalties collected from the GMR Royalties Deal, **WITHOUT** leave to amend.

**IT IS SO ORDERED.**

February 26, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**