# United States District Court
# Central District of California

| | |
|---|---|
| ERIC PODWALL,<br><br>        Plaintiff,<br><br>    v.<br><br>WILLIAM "SMOKEY" ROBINSON, JR.,<br><br>        Defendant. | Case № 2:16-cv-06088-ODW (AGRx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE [87] AND STAYING CASE** |

## I. INTRODUCTION

In this breach of contract action, Plaintiff Eric Podwall ("Podwall") seeks to recover unpaid commissions from Defendant William "Smokey" Robinson ("Robinson") pursuant to a written agreement. (*See* First Am Compl. ("FAC"), ECF No. 52.) Pending before the Court is Robinson's Motion for Summary Judgment ("Motion"). (Mot. Summ. J. ("MSJ"), ECF No. 87.) For the reasons that follow, the Court **DENIES** Robinson's Motion without prejudice and **STAYS** the case.[1]

## II. BACKGROUND

Robinson is a well-known musician who has been in the music business for decades. (FAC ¶ 1.) Podwall is a personal manager who has also worked in the

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

entertainment industry for decades. (Pl's Additional Material Facts ("AMF") 12, ECF No. 91.) In September 2012, Podwall and Robinson entered into a written letter agreement, which Podwall refers to as a "Management Agreement." (AMF 15; *see also* FAC ¶ 8, Ex. 1 ("Agreement").) The Agreement provides, among other things, that Podwall would receive "[t]en percent of gross compensation derived from all products of [Robinson's] services" for the period of the Agreement. (Agreement ¶ 2.) The Agreement includes commission on Robinson's live performances booked after the date of the Agreement and performed after June 1, 2013. (Agreement ¶ 2.) Podwall alleges that Robinson sent him a letter terminating the Management Agreement in December 2015. (FAC ¶ 22.)

A. **INITIAL COMPLAINT**

On July 15, 2016, Podwall filed the Complaint in this action seeking to recover unpaid commissions on Robinson's "recording, performing and touring activities as well as from the [Global Music Rights ("GMR") royalties] deal." (Compl. ¶ 27, ECF No. 1.) On October 20, 2016, the Court denied Robinson's motion to dismiss and stayed the case to allow Podwall to petition the California Labor Commissioner ("CLC") for a determination on whether Podwall violated the Talent Agency Act ("TAA") by acting as Robinson's personal manager without a talent agency license. (Order Den. Mot. to Dismiss and Staying Case ("Stay Order"), ECF No. 19.)

B. **LABOR COMMISSIONER DETERMINATION OF CONTROVERSY**

On June 22, 2018, the Labor Commissioner issued its Determination of Controversy ("CLC Det.").[2] The Labor Commissioner found that Podwall was not required to obtain a talent agency license for certain agreements, including the GMR royalties deal, but that Podwall's involvement in procuring four specific performance events violated the TAA because Podwall had acted as a talent agent without a license. (CLC Det. 11–16, 19.) In determining whether to void the Agreement

---

[2] The Court previously judicially noticed the Labor Commissioner's Determination of Controversy. (Order Den. Mot. to Dismiss FAC ("Order Den. MTD FAC") 5, ECF No. 70; *see also* Decl. of Rhonda H. Wills Ex. 6, ECF No. 87-9.)

2

because of the violations, the Labor Commissioner concluded that severance served the interests of justice, in part because the four violations "are not representative of the hundreds of events [Robinsons' talent agency], not [Podwall], secured for [Robinson] during the three years [Podwall] served as personal manager." (CLC Det. 17, 19.)

### C. First Amended Complaint

Following the Labor Commissioner's Determination, the Court lifted the stay. (Order on Req. to Lift Stay, ECF No. 35.) The Court granted in part Robinson's renewed motion to dismiss as to Podwall's claim for commissions on "touring revenue" but granted Podwall thirty days to amend his Complaint, which he did on December 11, 2018. (*See* Order on Mot. to Dismiss Compl. 6–7, ECF No. 50; FAC.) In his FAC, Podwall brings causes of action for breach of contract, quantum meruit, and accounting. (FAC ¶¶ 23–38.) He seeks to recover commissions on more than one hundred newly-identified performances. (FAC ¶ 14.) Robinson moved to dismiss the FAC, arguing the Labor Commissioner had not considered the newly-listed performances. (Mot. to Dismiss FAC 6, ECF No. 53.) The Court denied Robinson's motion in part, finding it plausible at the pleading stage that the newly-identified performances were those the Labor Commissioner referenced in her severance analysis. (Order Den. MTD FAC 8.) Robinson now moves for summary judgment on Podwall's FAC. (*See* MSJ 1–4.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a

genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Robinson moves for summary judgment as to Podwall's FAC on the grounds that Podwall: (1) failed to provide notice and an opportunity to cure as required by the Agreement; (2) cannot prove that the newly-identified performances in the FAC were considered by the Labor Commissioner; (3) cannot prove damages; and (4) cannot prove his quantum meruit claim. (MSJ 1–4.) After reviewing the arguments and evidence submitted by the parties, Court finds no evidence that the Labor Commissioner considered the specific performances raised for the first time in Podwall's FAC. Accordingly, the Court must again stay this case to allow the Labor Commissioner to consider, in the first instance, whether the facts surrounding the newly-identified FAC performances fall within the TAA.

### A. PERFORMANCES

Robinson argues the Court should grant summary judgment because Podwall cannot prove the FAC performances are the same as those the Labor Commissioner considered. (MSJ 10–16.) Podwall contends the evidence shows that the Labor Commissioner considered all of Robinson's hundreds of performances and found Podwall violated the TAA with respect to only four. He argues this means the FAC performances alleged must be the same as the performances that the Labor Commissioner considered. (Opp'n to MSJ 9, ECF No. 90.)

*1. The Labor Commissioner's Exclusive Jurisdiction*

The Labor Commissioner has exclusive original jurisdiction to hear controversies that colorably arise under the TAA. Cal. Lab. Code § 1700.44; *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 981 n.2 (2008); *Styne v. Stevens*, 26

Cal. 4th 42, 59 (2001). The term "colorable" is used in its "broadest sense." *Styne*, 26 Cal. 4th at 58–59 n.10. This means that "reference of disputes involving the [TAA] to the [Labor] Commissioner is *mandatory*." *Id.* at 54. Indeed, "[t]he [Labor] Commissioner's exclusive jurisdiction to determine his jurisdiction . . . thus empowers him alone to decide, *in the first instance*, whether the facts do bring the case within the [TAA]." *Id.* at 55 n.6 (emphasis added). The TAA "does not require any party to invoke the [Labor] Commissioner's jurisdiction *before* such a controversy has arisen." *Id.* at 59–60. Once a controversy arises, it is appropriate to stay the case until the Labor Commissioner has had an opportunity to consider the matter. *Id.* at 61–62; *see also Lauwrier v. Garcia*, No. CV 12-07381-MMM (SHx), 2013 WL 11238497, at *9 (C.D. Cal. Mar. 8, 2013).

Under the TAA, anyone who solicits or procures employment or artistic engagements for artists must obtain a talent agency license. Cal. Lab. Code § 1700.5; *Marathon Entm't*, 42 Cal. 4th at 985. A contract "involving the services of an unlicensed person in violation of the" TAA may be unenforceable. *Styne*, 26 Cal. 4th at 55; *see also Marathon Entm't*, 42 Cal. 4th at 995 (discussing that the Labor Commissioner may deny all recovery for services in violation of the TAA). While the TAA "does not cover services such as personal management, [it] does cover managers . . . if they solicit and procure employment on behalf of artists." *Siegel v. Bradstreet*, No. CV 08-2480 CAS (SSx), 2008 WL 4195949, at *3 (C.D. Cal. Sept. 8, 2008) (citing *Marathon Entm't*, 42, Cal. 4th at 988). A controversy may implicate the TAA when a manager's conduct as to any particular engagement crosses the line between advice and procurement; even a single or incidental act of procurement brings one within the ambit of the TAA. *Blanks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 359 (2009). Thus, "a personal manager who solicits or procures employment for his artist-client is subject to and must abide by the Act." *Marathon Entm't*, 42 Cal. 4th at 986.

The allegations in Podwall's initial Complaint raised the specter of the TAA; accordingly, the Court stayed the case to allow Podwall to petition the Labor Commissioner for a determination of whether the facts alleged brought the action within the TAA. (*See* Stay Order 7.) The Labor Commissioner found that they did. (*See* CLC Det. 11–13.) The Labor Commissioner found that Podwall procured or attempted to procure four engagements for Robinson, in violation of the TAA. (CLC Det. 11–13.) As such, controversies in this matter regarding Podwall's involvement with Robinson's performances may colorably arise under the TAA. *See Marathon Entm't*, 42 Cal. 4th at 990; *Blanks*, 171 Cal. App. 4th at 359.

After the Labor Commissioner issued her determination, Podwall amended his complaint to add more than one hundred specific performances on which he seeks to recover commissions. (FAC ¶¶ 14–15.) Although it was plausible at the pleading stage that the performances Podwall identified in his FAC could have been the same "hundreds of events" referenced in the Labor Commissioner's severance analysis, summary judgment requires more than a plausible inference. *See Celotex*, 477 U.S. at 322–23. Here, on summary judgment, the parties' evidence simply does not support a finding that the Labor Commissioner considered the FAC-performances.

*2. Evidence Before the Labor Commissioner*

On November 2, 2016, Podwall petitioned the Labor Commissioner for a determination that the TAA "is inapplicable to certain services that Podwall performed for Robinson." (Decl. of Jesse A. Kaplan ("Kaplan Decl.") Ex. 1 ("CLC Petition") ¶ 1, ECF No. 94-1.)[3] Podwall's listed services included "providing career advice," helping to "obtain a recording agreement," and negotiating the GMR

---

[3] Podwall requests judicial notice of the pleadings, briefings, and excerpts of the transcript from the administrative hearing. (Req. Judicial Notice, ECF No. 93; Kaplan Decl. Exs. 1–5.) Documents that are part of a state administrative proceeding may be judicially noticed for their existence but not the truth of the facts therein. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1023 (S.D. Cal. 2006) (citing *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003)); *see also United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008). Accordingly, the Court **GRANTS** Podwall's request and takes judicial notice of the existence of the requested documents. (ECF No. 93.)

royalties collections contract. (*See* CLC Petition ¶ 10.) Podwall's petition did not identify any specific performances or otherwise put them in issue.[4] (*See generally* CLC Petition.) Robinson answered and counterclaimed, seeking a declaration that the Agreement was void *ab initio* as an illegal contract between an unlicensed talent agent and an artist. (Kaplan Decl. Ex. 2 ("CLC Countercl.") 3, ECF No. 94-2.) Robinson's response also did not put any specific performances in issue. (*See generally* CLC Countercl.)

At the administrative hearing, the Labor Commissioner heard testimony from Podwall that Robinson had "somewhere around 200" performances during the relevant time, and from Robinson that the number or performances could be in the "hundreds." (Kaplan Decl. Ex.4 ("CLC Transcript") 165, 242, ECF No. 94-4.) Another witness testified in accord. (CLC Transcript 327 ("I think you could say, several hundred.").) However, no evidence in the record suggests that either party raised, or the Labor Commissioner considered, the specific performances Podwall identified in his FAC following the Labor Commissioner's Determination. The Labor Commissioner's vague reference to "hundreds of events" is not sufficient on summary judgment to show that she considered the FAC-performances. *See Celotex*, 477 U.S. at 322–23.

Podwall's FAC alleges newly-identified performances not previously contemplated by the Labor Commissioner, raising a new controversy for the Labor Commissioner's consideration. Whether the facts surrounding those performances bring them within the TAA must be determined in the first instance by the Labor Commissioner, and before the Court may consider Robinson's Motion for Summary Judgment. *See Styne*, 26 Cal. 4th at 56–57, 58–59. Consequently, the Court must again stay this case pending the Labor Commissioner's determination regarding the newly-identified performances in Podwall's FAC.

---

[4] The Labor Commissioner denied Podwall's attempt to introduce additional evidence "relating to several performances currently at issue and raised for the first time during the [administrative] hearing." (CLC Det. ¶¶ 29–30.)

Accordingly, **within thirty days of the date of this Order**, Robinson shall petition the Labor Commissioner for a Determination of Controversy concerning the specific performances that Podwall alleges in his FAC. As Robinson raises the affirmative defense of TAA violations to bar Podwall's recovery of commissions under the Agreement, Robinson bears the burden in the administrative proceeding to establish that Podwall violated the TAA. *See Styne*, 26 Cal. 4th at 53–55, 59; *McCoy v. Bd. of Retirement*, 183 Cal. App. 3d 1044, 1059 n.5 (1986). Robinson's failure to timely petition the Labor Commissioner as ordered will be construed as a waiver of this defense.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Robinson's Motion for Summary Judgment without prejudice. (ECF No. 87.) The Court **STAYS** the case pending the Labor Commissioner's Determination of Controversy concerning the specific performances on which Podwall seeks to recover commissions in his FAC. The Court **VACATES** all dates pending the stay. The parties shall file **Joint Status Reports every forty-five days**, with the first report being due **forty-five days** after the date of this Order. The parties shall report any ruling by the Labor Commissioner within ten days of entry.

**IT IS SO ORDERED.**

October 30, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

9