Bryan J. Freedman, Esq. (SBN 151990)
Jesse A. Kaplan, Esq. (SBN 255059)
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone:  (310) 201-0005
Facsimile:   (310) 201-0045
E-mail: bfreedman@ftllp.com
E-mail: jkaplan@ftllp.com

Attorneys for Plaintiff Eric Podwall


A. SASHA FRID (State Bar No. 216800)
sfrid@millerbarondess.com
DAVID W. SCHECTER (State Bar No. 296251)
dschecter@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:   (310) 552-8400


Attorneys for WILLIAM "SMOKEY"
ROBINSON, JR

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC PODWALL, an individual,<br><br>      Plaintiff,<br><br>     v.<br><br>WILLIAM "SMOKEY" ROBINSON, JR., an individual,<br><br>      Defendant. | **CASE NO. 2:16-cv-06088-ODW (AGRx)**<br><br>**JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>The Hon. Otis D. Wright II<br><br>Case Removed:  August 15, 2016<br>Final PTC:  January 14, 2022<br>Trial Date:  February 15, 2022 |

*Miller Barondess, LLP*
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

549668.1

Plaintiff Eric Podwall ("Plaintiff" or "Podwall") and Defendant William "Smokey" Robinson, Jr. ("Defendant" or "Robinson"), by and through their undersigned attorneys, submit the foregoing Joint Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

## I.  CLAIMS AND DEFENSES

### A.  Plaintiff's Claims

Pursuant to Local Rule 16-4.1(a), the following is a summary statement of the claims Plaintiff has pleaded and plans to pursue:

**Claim 1 in the FAC**:  Breach of written contract by defendant Robinson.

**Claim 2 in the FAC**: Alternatively, quantum meruit against defendant Robinson.[1]

### B.  The Elements of Plaintiff's Claims

Pursuant to Local Rule 16-4.1(b), the elements required to establish Plaintiff's claims are as follows:

**Breach of written contract**

To recover damages from defendant Robinson for breach of contract, plaintiff Podwall must prove all of the following:

1. That plaintiff Podwall and defendant Robinson entered into a contract;

2. That plaintiff Podwall did all, or substantially all, of the significant things that the contract required him to do;

3. That defendant Robinson failed to do something that the contract required him to do;

5. That plaintiff Podwall was harmed; and

---

[1] Plaintiff Podwall intends to pursue this claim for Quantum Meruit in the alternative to his breach of written contract claim.  Specifically, Podwall only intends to pursue the quantum meruit claim if the jury finds that there was no breach of written contract between Podwall and defendant Robinson.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

6. That defendant Robinson's breach of contract was a substantial factor in causing Podwall's harm.

*See* Judicial Council of California Civil Jury Instruction 303 (2019)

**Quantum meruit**

Plaintiff Podwall claims that defendant Robinson owes him money for services rendered. To establish this claim, plaintiff Podwall must prove all of the following:

1. That defendant Robinson requested, by words or conduct, that plaintiff Podwall perform services for the benefit of defendant Robinson;

2. That plaintiff Podwall performed the services as requested;

3. That defendant Robinson has not fully paid plaintiff Podwall for the services; and

4. The reasonable value of the services that were provided.

**C.     The Evidence Supporting Plaintiff's Claims**

Pursuant to Local Rule 16-4.1(c), Plaintiff provides a brief description of the key evidence in support of each of the claims, and Defendant provides a brief description of the key evidence in opposition to each of the claims.

**1.     The Breach of Contract Claim**

Plaintiff's Evidence

To recover damages from defendant Robinson for breach of contract, plaintiff Podwall must prove all of the following:

1. That plaintiff Podwall and defendant Robinson entered into a contract

•     The timing and substance of the relevant pre-contract meeting and contract negotiation will be evidenced by live testimony of Podwall, Robinson and Brian French and by several e-mails.

•     Contract formation will be evidenced by live testimony of Podwall, Robinson and French and a copy of the Management Agreement signed by Robinson and Podwall.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

2. That plaintiff Podwall did all, or substantially all, of the significant things that the contract required him to do

• Podwall's performance under the Management Agreement will be evidenced primarily by live testimony by Podwall and Paul George. Performance will also be evidence by several e-mails.

3. That defendant Robinson failed to do something that the contract required him to do

• Robinson breached Section 2 of the Management Agreement by failing to pay Podwall ten (10) percent of Robinson's gross earnings from various live performances that occurred between June 2013 and the end of February 2016. In particular, Robinson performed in at least 251 live performances that occurred during the June 2013 to the end of February 2016 timeframe. Robinson earned approximately $10 million from those performances. Accordingly, Robinson owed Podwall approximately $1 million in performance related commissions under Section 2 of the Management Agreement. To date, Defendant has paid Podwall less than $25,000.00 of the $1 million owed in performance related commissions under the Management Agreement.

• Defendant Robinson's payment obligations will be evidenced by the Management Agreement itself and the live testimony of Podwall.

• Robinson's breaches will be evidenced by the live testimony of Podwall, Robinson, George, Rob Heller, Heller's former WME assistants, Earl Bryant, Tom Wolff and the deposition testimony of Robinson's long time and former bookkeeper, Jan Stern.

• Robinson's breaches will also be evidenced by Robinson's financial ledgers which were prepared by Stern and business records prepared by William Morris Endeavor ("WME"), Robinson's former talent agency that booked all of the performances at issue. These live performances and payments are further corroborated by business records prepared by Podwall's office.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

- That Robinson only paid around $25,000.00 in commissions is evidenced by Podwall's testimony and Podwall's accounting records and Robinson's checks.

- Robinson also breached Section 2 of the Management Agreement by failing to pay Podwall a ten (10) percent commission on an advance payment Robinson received from Verve Records in September 2014 in connection with a recording agreement.  If necessary, this breach is evidenced by the live testimony of Lex Conboy from the record company, the recording agreement at issue and the record company's business records showing the payment of the advance.

- That defendant Robinson did not pay Podwall a commission on the record company advance is evidenced by Podwall's testimony and Podwall's accounting records and Robinson's checks.

5. That plaintiff Podwall was harmed

- Here, Defendant Robinson's breach was his failure to pay Podwall. Accordingly, defendant Robinson's breach and Podwall's damages are synonymous.  The same evidence used to prove that defendant Robinson breached the contract will be used to prove damages.  In particular, the amount of damages will be proved by the business records identified above.

6. That defendant Robinson's breach of contract was a substantial factor in causing Podwall's harm.

- Here, Defendant Robinson's breach was his failure to pay Podwall. Accordingly, defendant Robinson's breach and Podwall's damages are synonymous.  The same evidence used to prove that defendant Robinson breached the contract will be used to prove damages.  In particular, the amount of damages will be proved by the business records identified above.

Defendant's Evidence

A brief description of the key evidence in opposition to this claim is as follows:  Robinson, along with his production manager Brian French ("French"),

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

will testify that the deal agreed to by Podwall and Robinson was that Podwall would serve as Robinson's manager to obtain television and film opportunities and that, if Podwall was able to secure any such opportunities for Robinson, Podwall would be entitled to a ten percent (10%) commission on those opportunities.  Because Robinson has been performing concerts and tours his entire career, such concerts and performances would be excluded from Podwall's commissions unless Podwall brought such opportunities to Robinson—and in that case, Podwall would be entitled to a commission on those concerts or performances only.  Robinson and French were directly involved in the discussions which led to the formation of this contract.  Robinson's former agent, Rob Heller ("Heller"), and tour manager, Earl Bryant ("Bryant"), will also testify that Podwall was Robinson's television and film manager from approximately September 2012 to December 2015, and that Podwall generally had no role or responsibilities with respect to Robinson's live performance business.  Podwall is seeking commissions on Robinson's live performances, but he did not bring those opportunities to Robinson and is not entitled to any commissions on them.  Podwall's claim of breach is unfounded, as is his claim of any damages flowing from any breach.  Podwall was paid in full the commissions he was owed.  Further, because Podwall is seeking commissions for live performances that he did not secure for Robinson, Podwall's breach of contract claim fails for the additional reason that Podwall did not perform his contractual obligations that would entitle him to commissions.  These facts will be established from the testimony of Robinson, French, Heller and Bryant, and e-mails, invoices and other documents showing that Podwall is not entitled to commissions of Robinson's live performances.

## 2. **The Quantum Meruit Claim**

Plaintiff's Evidence

1. That defendant Robinson requested, by words or conduct, that plaintiff Podwall perform services for the benefit of defendant Robinson.

- That defendant Robinson requested management services from Podwall will be evidenced by the by live testimony of Podwall, Robinson and Brian French and by several e-mails.

2. That plaintiff Podwall performed the services as requested.

- Podwall's performance under the Management Agreement will be evidenced primarily by live testimony by Podwall and Paul George. Performance will also be evidence by several e-mails.

3. That defendant Robinson has not fully paid plaintiff Podwall for the services.

- That Robinson did not fully pay is evidenced by Podwall's testimony and Podwall's accounting records and Robinson's checks.

4. The reasonable value of the services that were provided.

- The reasonable value of Podwall's management services will be evidenced by Podwall's testimony.

<u>Defendant's Evidence</u>

A brief description of the key evidence in opposition to this claim is as follows: Podwall did not perform any work for the live performances that he seeking commissions for. The value of his "services" is zero. This will be supported by the testimony of Robinson, French, Bryant and Heller, and e-mails, invoices and other documents showing that Podwall did not have any role with respect to these performances. He was not the talent agent, production manager, tour manager or publicist.

### D. **Defendant's Affirmative Defenses**

Pursuant to Local Rule 16-4.1(d), Defendant provides a summary statement of the affirmative defenses Defendant has pleaded and plans to pursue.

First Affirmative Defense: Plaintiff's claims are barred under the doctrine of waiver.

Second Affirmative Defense: Plaintiff's claims are barred under the doctrine

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

of estoppel.

Third Affirmative Defense:  Plaintiff's claims are barred under the doctrine of unclean hands.

Fourth Affirmative Defense:  Plaintiff's claims are barred due to his fraudulent and deceitful conduct.

Fifth Affirmative Defense:  Plaintiff's claims are barred under the doctrine of mistake.

Sixth Affirmative Defense:  Plaintiff's claims are barred under the doctrine of accord and satisfaction.

Seventh Affirmative Defense:  Plaintiff's claims are barred by the affirmative defense of novation.

**E.**    **Elements Required to Establish Defendant's Affirmative Defenses**

Pursuant to Local Rule 16-4.1(e), these are the elements required for each affirmative defense:

Elements Required to Establish Defendant's Affirmative Defense of Waiver

1.    Plaintiff knew Defendant was required to pay commissions on live performances;

2.    Plaintiff freely and knowingly gave up his right to have Defendant perform this obligation.

A waiver may be oral or written or may arise from conduct that shows that Plaintiff gave up that right.  If Defendant proves that Plaintiff gave up his right to Defendant's payment of commissions for live performances, then Defendant was not required to perform this obligation.

Authority:  Judicial Council of California Civil Jury Instructions (2020 Edition) No. 336

Plaintiff's Note on Waiver:  Plaintiff does not dispute the elements identified above, except that Defendant has not adequately identified the standard of proof –

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

clear and convincing evidence.  Defendant must prove both of the elements identified above by clear and convincing evidence.  *See* Judicial Council of California Civil Jury Instructions (2020 Edition) No. 336; *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60–61 (1994).

Elements Required to Establish Defendant's Affirmative Defense of Estoppel

1.  Plaintiff must know the facts;

2.  Plaintiff must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended;

3.  Defendant must be ignorant of the true state of facts; and

4.  Defendant relies upon Plaintiff's conduct to his injury.

Authority:  *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 59-60 (1994); Cal. Evid. Code § 623.

Elements Required to Establish Defendant's Affirmative Defense of Unclean Hands

1.  Inequitable conduct by the Plaintiff;

2.  The Plaintiff's conduct directly relates to the claim which he has asserted against the Defendant; and

3.  Plaintiff's conduct injured the Defendant.

Authority:  *Jade Fashion & Co., Inc. v. Harkham Industries, Inc.*, 229 Cal. App. 4th 635, 653-54 (2014); *see Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 638 (1995) ("In California, the doctrine of unclean hands may apply to legal as well as equitable claims . . . and to both tort and contract remedies.")

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Elements Required to Establish Defendant's Affirmative Defense of Fraud/Deceit

1.    Plaintiff represented that the contract did not entitle him to commissions on live performances that he did not procure and that any language that said otherwise had been taken out;

2.    Plaintiff knew those representations were not true;

3.    Plaintiff made the representation to persuade Defendant to agree to the contract;

4.    Defendant reasonably relied on these representations; and

5.    Defendant would not have entered into the contract if he had known that the representations were not true.

Authority:  Judicial Council of California Civil Jury Instructions (2020 Edition) No. 330

Elements Required to Establish Defendant's Affirmative Defense of Mistake

1.    That Defendant was mistaken about language in the written agreement which would allow Podwall to collect commissions on Defendant's live performances that Podwall had no role in procuring.

2.    That Plaintiff knew Defendant was mistaken and used that mistake to take advantage of him;

3.    That Defendant's mistake was not caused by his excessive carelessness; and

4.    That Defendant would not have agreed to enter into the contract if he had known about the mistake.

If you the jury decide that Defendant has proven all of the above, then no contract was created.

Authority: Judicial Council of California Civil Jury Instructions (2020

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  Edition) No.  330

3      Elements Required to Establish Defendant's Affirmative Defense of Accord and

4                                    Satisfaction

5      1.      There was a bona fide dispute between the parties;

6      2.      Defendant made it clear that acceptance of what he tendered was

7  subject to the condition that it was to be in full satisfaction of the Plaintiff's

8  unliquidated claim; and

9      3.      Plaintiff clearly understood when accepting what was tendered that the

10  debtor intended such remittance to constitute payment in full of the particular claim

11  in issue.

13      Authority:  *BII Finance Co. v. U-States Forwarding Services Corp.*, 95 Cal.

14  App. 4th 111, 126 (2002); *Conderback, Inc., v. Standard Oil Co.*, 239 Cal. App. 2d

15  664, 680 (1966) ("The question whether an agreement amounts to an accord and

16  satisfaction is one of the intention of the parties and is therefore a question of fact.")

18      Elements Required to Establish Defendant's Affirmative Defense of Novation

19      1.      All parties agreed, by words or contract, to cancel the original contract

20  and to substitute a new contract in its place.

22      Authority:  Judicial Council of California Civil Jury Instructions (2020

23  Edition) No.  337

25      **F.      Evidence Supporting Defendant's Affirmative Defenses**

26      Pursuant to Local Rule 16-4.1(f), the parties provide a brief summary of the

27  key evidence supporting and opposing Defendant's affirmative defenses:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1. **Waiver**

Defendant's Evidence

The evidence supporting this affirmative defense is summarized as follows: In 2013, Paul George ("George"), who works for Plaintiff's company Podwall Entertainment, sent an invoice on behalf of Plaintiff and/or his company to Defendant's business manager seeking commissions for certain live performances. Defendant rejected this invoice as contrary to the parties' agreement.  Thereafter, Plaintiff did not file a lawsuit or otherwise pursue a claim for these commissions, and he never followed up in writing to seek these commissions.  Further, as Defendant continued to conduct live performances and receive payments for those performances, Plaintiff did not send Defendant invoices or otherwise request payment in writing.  Plaintiff did not present Defendant with any written claim for these commissions until years later in 2016 after he was terminated.  Plaintiff knowingly and intentionally relinquished any right to collect these commissions by not seeking these commissions while continuing to serve as Defendant's television and film manager from 2012 to 2015.  Plaintiff claims that he spoke to Defendant over the phone and in person to request these commissions, but this testimony is contradicted by Defendant and is not credible.  These facts will be established through the testimony of Robinson, Podwall, Heller, Bryant, French and George, and e-mails, invoices and other documents showing Plaintiff's knowing and intentional relinquishment of his right to collect commissions on Defendant's live performances.

Plaintiff's Evidence

1.    Plaintiff does not dispute that he knew Defendant was required to pay commissions on live performances.

2.    Plaintiff disputes that he freely and knowingly gave up his right to have Defendant perform the obligation to pay commissions on live performances. Podwall will rely on evidence that after Robinson's obligation to pay commissions

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW

on his touring/performance revenue began in June 2013, and Robinson failed to make commission payments to Podwall, Podwall had numerous conversations with Robinson about Robinson's non-payment between 2013 and 2016.  Podwall never told Robinson that he would not have to pay commissions.  Rather, throughout these multiple conversations with Robinson, Podwall clearly and consistently notified Robinson that he owed commissions under the Management Agreement on touring/live performances, and that Robinson needed to pay Podwall those commissions.  In sum and substance, Podwall continued to remind Robinson that he needed to pay Podwall commissions as required by the Management Agreement, that his non-payment needed to be fixed, and that he owed a commission on all of the live performances that took place since June 2013.  In sum and substance, Robinson continued to make excuses and stated that he needed more time to pay Podwall what was owed, and that he intended to do so.  These facts will be evidenced by Podwall's testimony.

Podwall will also rely on evidence that Podwall and George continued performing management services under the Management Agreement, and that Robinson was aware of such continued performance.  It was clear that Podwall (and George) were not working for free, and that Podwall expected to be compensated as required by the Management Agreement.  Such continued performance under the Management Agreement will be evidenced primarily by testimony by Podwall, George and Robinson.  Performance will also be evidence by several e-mails.  Podwall will also rely on the language of the Management Agreement itself.

## 2. **Estoppel**

Defendant's Evidence

The evidence supporting this affirmative defense is summarized as follows: In 2013, Paul George ("George"), who works for Plaintiff's company Podwall Entertainment, sent an invoice on behalf of Plaintiff and/or his company to Defendant's business manager seeking commissions for certain live performances.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Defendant rejected this invoice as contrary to the parties' agreement.  Thereafter,

2  Plaintiff did not file a lawsuit or otherwise pursue a claim for these commissions,

3  and he never followed up in writing to seek these commissions.  Further, as

4  Defendant continued to conduct live performances and receive payments for those

5  performances, Plaintiff did not send Defendant invoices or otherwise request

6  payment in writing.  Plaintiff did not present Defendant with any written claim for

7  these commissions until years later in 2016 when he filed the Complaint in this

8  matter.  Plaintiff did not seek these commissions while continuing to serve as

9  Defendant's television and film manager from 2012 to 2015.  Plaintiff claims that he

10 spoke to Defendant over the phone and in person to request these commissions, but

11 this testimony is contradicted by Defendant and is not credible.  Plaintiff, through

12 his conduct and statements, led Defendant to believe that Plaintiff had dropped his

13 request for these commissions.  Defendant would have exercised his right to

14 terminate the written agreement in 2014 if Defendant knew that Plaintiff still

15 claimed that he is owed these commissions.  These facts will be established through

16 the testimony of Robinson, Podwall, Heller, Bryant, French and George, and e-

17 mails, invoices and other documents showing Plaintiff is estopped from collecting

18 commissions on Defendant's live performances.

19     Plaintiff's Evidence

20     1.     Plaintiff does not dispute that he knew Defendant was required to pay

21 commissions on live performances.

22     2.     Plaintiff disputes that he intended that his conduct would be acted upon

23 by Robinson, or that Podwall acted so that Robinson had the right to believe that it

24 was so intended.  In particular, Podwall did not engage in any conduct to cause

25 Robison to believe that Robinson would not be required to pay commissions on live

26 performances.  Podwall will rely on evidence that after Robinson's obligation to pay

27 commissions on his touring/performance revenue began in June 2013, and Robinson

28 failed to make commission payments to Podwall, Podwall had numerous

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

14

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

conversations with Robinson about Robinson's non-payment between 2013 and 2016.  Podwall never told Robinson that he would not have to pay commissions.  Rather, throughout these multiple conversations with Robinson, Podwall clearly and consistently notified Robinson that he owed commissions under the Management Agreement on touring/live performances, and that Robinson needed to pay Podwall those commissions.  In sum and substance, Podwall continued to remind Robinson that he needed to pay Podwall commissions as required by the Management Agreement, that his non-payment needed to be fixed, and that he owed a commission on all of the live performances that took place since June 2013.  In sum and substance, Robinson continued to make excuses and stated that he needed more time to pay Podwall what was owed, and that he intended to do so.  These facts will be evidenced by Podwall's testimony.

Podwall will also rely on evidence that Podwall and George continued performing management services under the Management Agreement, and that Robinson was aware of such continued performance.  It was clear that Podwall (and George) were not working for free, and that Podwall expected to be compensated as required by the Management Agreement.  Such continued performance under the Management Agreement will be evidenced primarily by testimony by Podwall, George and Robinson.  Performance will also be evidence by several e-mails.  Podwall will also rely on the language of the Management Agreement itself.

3.      Podwall disputes that Robinson was ignorant of Podwall's intention to enforce the Management Agreement, in particular Robinson's obligations to pay commissions.  Podwall will rely on the same evidence identified in opposition to element 2.

4.      Podwall disputes that Robinson relied upon Podwall's conduct to his injury.  Podwall will rely on the same evidence identified in opposition to element 2.

### 3.      Unclean Hands

Defendant's Evidence

The evidence supporting this affirmative defense is summarized as follows: In 2012, Robinson, Podwall and French discussed the terms under which Podwall would serve as Robinson's television and film manager.  Those terms were that Podwall would help secure television and film appearances for Robinson and that Podwall would be entitled to a commission of ten percent (10%) of Robinson's revenue earned as a result of those appearances. If Robinson was able to secure a television or film role without the assistance of Podwall or if the opportunity was generated by someone else, Podwall would not be entitled to any commission.  With further discussions, Robinson told Podwall that he could collect commissions for live performances or other opportunities at the same percentage but only if Podwall created those opportunities for Robinson.  Robinson told Podwall directly that Podwall was not entitled to collect commissions on any of Robinson's live performance business that Robinson had already established long before Podwall became involved with Robinson.   Podwall indicated to Robinson and French that he understood and agreed to these terms.  Podwall, through French, provided Robinson with a draft written agreement, but this agreement was contrary to these terms and would allow Podwall to collect commissions on Robinson's live performance business.  Robinson told Podwall that this written agreement was contrary to their discussions and was not acceptable.  Robinson directed Podwall to amend the agreement accordingly.  Podwall told Robinson, in sum and substance, that he made the requested changes and that the written agreement conformed to the parties' discussions which was that Podwall was only entitled to collect a commission on opportunities that Podwall brought to Robinson that Robinson agreed to do. Contrary to his representations, Podwall did not make the requested changes and lied to Robinson to induce him to sign the written agreement.  Robinson relied on Podwall's representations and signed the agreement.  Podwall's fraud and deceit constitutes inequitable conduct that supports the unclean hands defense.  In addition, Robinson was over the age of 70 when he signed the agreement.  Podwall's

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  fraudulent and deceitful conduct also constitutes elder abuse under California law,

2  which further supports Robinson's unclean hands defense.  These facts will be

3  established through the testimony of Robinson, Podwall, French, Heller and Bryant,

4  and e-mails, invoices and other such documents.

5      Plaintiff's Evidence

6      1.      Podwall disputes that he engaged in any inequitable conduct.  This

7  defense mirrors Robinson's fraud defense.  Podwall disputes that he represented that

8  the contract did not entitle Podwall to commissions on live performances that he did

9  not procure and that any language that said otherwise had been taken out.  Podwall

10  will rely on evidence that in approximately late August 2012, Podwall met with

11  Robinson about becoming Robinson's personal manager (the "August 2012

12  Meeting").  That meeting was brokered by Brian French, one of Robinson's

13  associates.  French also attended that meeting.  At the August 2012 Meeting, the

14  parties discussed the contemplated management services/relationship.  Podwall

15  never represented that he would not commission all of Robinson's live

16  performances or live performances that he did not procure.  Podwall never

17  represented that he was going to procure employment or engagements for Robinson.

18      In the weeks that followed the August 2012 Meeting, the parties negotiated

19  the Management Agreement.  Robinson's associate, French, negotiated the

20  agreement on Robinson's behalf and spoke directly to Robinson about the

21  agreement and its proposed terms.  Podwall did not negotiate directly with Robinson

22  about the contemplated agreement.  Again, during those negotiations, Podwall

23  provided deal terms/drafts of the Management Agreement to both French and

24  Robinson.  Those draft deal terms clearly indicated that Podwall would commission

25  Robinson's gross touring revenues.  During Podwall's negotiations with French,

26  Podwall clearly indicated that he intended to commission Robinson's gross touring

27  revenues, and never said that he was going to remove such language from the

28  agreement.  Neither Robinson nor French objected to the proposed commissions on

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Robinson's touring revenue.  Neither French nor Robinson ever requested that Podwall remove such language. French, who was negotiating on Robinson's behalf, requested that Podwall make other modifications to the draft deal terms.  Podwall promptly made every change proposed by French/Robinson.

On or about September 10, 2012, Podwall, Robinson and French met at Robinson's home about the Management Agreement (the "September 2012 Meeting").  At the September 2012 Meeting, Podwall, Robinson and French reviewed the one-page Management Agreement.   Following their review of the Management Agreement, neither Robinson nor French expressed any objection to the Management Agreement.  At the September 2012 Meeting, Podwall and Robinson signed the Management Agreement.

These facts will be evidenced by testimony by Podwall, French and Robinson. They will also be evidence by the e-mails between French, Podwall and/or Robinson.

2.     As Podwall disputes that he made the representations at issue, there is nothing to address in connection with the second element of the unclean hands defense.

3.     Podwall disputes that he made the representations at issue.  Assuming that Podwall made any representation, which he did not, Podwall disputes that the alleged representations at issue caused Robinson to enter into the Management Agreement.   In particular, Robinson saw the substance of the final draft and signed it knowing that it obligated him to pay Podwall commissions on Robinson's gross touring revenue.  Podwall intends to rely on the same evidence identified in opposition to element 1.

### 4.     <u>Fraud/Deceit</u>

<u>Defendant's Evidence</u>

The evidence supporting this affirmative defense is summarized as follows: In 2012, Robinson, Podwall and French discussed the terms under which Podwall

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

would serve as Robinson's television and film manager.  Those terms were that Podwall would help secure television and film appearances for Robinson and that Podwall would be entitled to a commission of ten percent (10%) of Robinson's revenue earned as a result of those appearances. If Robinson was able to secure a television or film role without the assistance of Podwall or if the opportunity was generated by someone else, Podwall would not be entitled to any commission.  With further discussions, Robinson told Podwall that he could collect commissions for live performances or other opportunities at the same percentage but only if Podwall created those opportunities for Robinson.  Robinson told Podwall directly that Podwall was not entitled to collect commissions on any of Robinson's live performance business that Robinson had already established long before Podwall became involved with Robinson.   Podwall indicated to Robinson and French that he understood and agreed to these terms.  Podwall, through French, provided Robinson with a draft written agreement, but this agreement was contrary to these terms and would allow Podwall to collect commissions on Robinson's live performance business.  Robinson told Podwall, in sum and substance, that this written agreement was contrary to their discussions and was not acceptable.  Robinson directed Podwall to amend the agreement accordingly.  Podwall told Robinson, in sum and substance, that he made the requested changes and that the written agreement conformed to the parties' discussions which was that Podwall was only entitled to collect a commission on opportunities that Podwall brought to Robinson that Robinson agreed to do.  Contrary to his representations, Podwall did not make the requested changes and lied to Robinson to induce him to sign the written agreement. Robinson relied on Podwall's representations and signed the agreement.  These facts will be established through the testimony of Robinson, Podwall, French, Heller and Bryant, and e-mails, invoices and other such documents.

Plaintiff's Evidence

1.       Podwall disputes that he represented that the contract did not entitle

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  Podwall to commissions on live performances that he did not procure and that any

2  language that said otherwise had been taken out.  Podwall will rely on evidence that

3  in approximately late August 2012, Podwall met with Robinson about becoming

4  Robinson's personal manager (the "August 2012 Meeting").  That meeting was

5  brokered by Brian French, one of Robinson's associates.  French also attended that

6  meeting.  At the August 2012 Meeting, the parties discussed the contemplated

7  management services/relationship.  Podwall never represented that he would not

8  commission all of Robinson's live performances or live performances that he did not

9  procure.  Podwall never represented that he was going to procure employment or

10  engagements for Robinson.

11  In the weeks that followed the August 2012 Meeting, the parties negotiated

12  the Management Agreement.  Robinson's associate, French, negotiated the

13  agreement on Robinson's behalf and spoke directly to Robinson about the

14  agreement and its proposed terms.  Podwall did not negotiate directly with Robinson

15  about the contemplated agreement.  Again, during those negotiations, Podwall

16  provided deal terms/drafts of the Management Agreement to both French and

17  Robinson.  Those draft deal terms clearly indicated that Podwall would commission

18  Robinson's gross touring revenues.  During Podwall's negotiations with French,

19  Podwall clearly indicated that he intended to commission Robinson's gross touring

20  revenues, and never said that he was going to remove such language from the

21  agreement.  Neither Robinson nor French objected to the proposed commissions on

22  Robinson's touring revenue.  Neither French nor Robinson ever requested that

23  Podwall remove such language. French, who was negotiating on Robinson's behalf,

24  requested that Podwall make other modifications to the draft deal terms.  Podwall

25  promptly made every change proposed by French/Robinson.

26  On or about September 10, 2012, Podwall, Robinson and French met at

27  Robinson's home about the Management Agreement (the "September 2012

28  Meeting").  At the September 2012 Meeting, Podwall, Robinson and French

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

reviewed the one-page Management Agreement.   Following their review of the Management Agreement, neither Robinson nor French expressed any objection to the Management Agreement.  At the September 2012 Meeting, Podwall and Robinson signed the Management Agreement.

These facts will be evidenced by testimony by Podwall, French and Robinson. They will also be evidence by the e-mails between French, Podwall and/or Robinson.

2.    As Podwall disputes that he made the representations at issue, there is nothing to address in connection with the second element of the fraud defense.

3.     As Podwall disputes that he made the representations at issue, there is nothing to address in connection with the third element of the fraud defense.

4.    As Podwall disputes that he made the representations at issue. Assuming that Podwall made any misrepresentation, which he did not, Robinson's purported reliance was not reasonable.  Robinson was provided with multiple drafts, including the final version that he signed at the September 12 Meeting.  The one-page document, which Robinson reviewed, clearly stated that Podwall would commission all of Robinson's gross touring revenues.  Podwall intends to rely on the same evidence identified in opposition to element 1.

5.    Podwall disputes that he made the representations at issue.  Assuming that Podwall made any representation, which he did not, Podwall disputes that the alleged representation(s) at issue caused Robinson to enter into the Management Agreement.   In particular, Robinson saw the substance of the final draft and signed it knowing that it obligated him to pay Podwall commissions on Robinson's gross touring revenue.  Podwall intends to rely on the same evidence identified in opposition to element 1.

### 5.    **Mistake**

#### Defendant's Evidence

The evidence supporting this affirmative defense is summarized as follows:

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

In 2012, Robinson, Podwall and French discussed the terms under which Podwall would serve as Robinson's television and film manager.  Those terms were that Podwall would help secure television and film appearances for Robinson and that Podwall would be entitled to a commission of ten percent (10%) of Robinson's revenue earned as a result of those appearances. If Robinson was able to secure a television or film role without the assistance of Podwall or if the opportunity was generated by someone else, Podwall would not be entitled to any commission.  With further discussions, Robinson told Podwall, in sum and substance, that he could collect commissions for live performances or other opportunities at the same percentage but only if Podwall created those opportunities for Robinson.  Robinson told Podwall directly that Podwall was not entitled to collect commissions on any of Robinson's live performance business that Robinson had already established long before Podwall became involved with Robinson.   Podwall indicated to Robinson and French that he understood and agreed to these terms.  Podwall, through French, provided Robinson with a draft written agreement, but this agreement was contrary to these terms and would allow Podwall to collect commissions on Robinson's live performance business.  Robinson told Podwall, in sum and substance, that this written agreement was contrary to their discussions and was not acceptable. Robinson directed Podwall to amend the agreement accordingly.  Podwall told Robinson, in sum and substance, that he made the requested changes and that the written agreement conformed to the parties' discussions which was that Podwall was only entitled to collect a commission on opportunities that Podwall brought to Robinson that Robinson agreed to do.  Contrary to his representations, Podwall did not make the requested changes and lied to Robinson to induce him to sign the written agreement.  Robinson relied on Podwall's representations and signed the agreement.  These facts will be established through the testimony of Robinson, Podwall, French, Heller and Bryant, and e-mails, invoices and other such documents.

JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

<u>Plaintiff's Evidence</u>

1.      Podwall disputes that Robinson was mistaken about language in the written agreement which would allow Podwall to collect commissions on Defendant's live performances that Podwall had no role in procuring.  That language was clearly articulated to Robinson and French.  Podwall will rely on evidence that in approximately late August 2012, Podwall met with Robinson about becoming Robinson's personal manager (the "August 2012 Meeting").  That meeting was brokered by Brian French, one of Robinson's associates.  French also attended that meeting.  At the August 2012 Meeting, the parties discussed the contemplated management services/relationship.  Podwall never represented that he would not commission all of Robinson's live performances or live performances that he did not procure.  Podwall never represented that he was going to procure employment or engagements for Robinson.

In the weeks that followed the August 2012 Meeting, the parties negotiated the Management Agreement.  Robinson's associate, French, negotiated the agreement on Robinson's behalf and spoke directly to Robinson about the agreement and its proposed terms.  Podwall did not negotiate directly with Robinson about the contemplated agreement.  Again, during those negotiations, Podwall provided deal terms/drafts of the Management Agreement to both French and Robinson.  Those draft deal terms clearly indicated that Podwall would commission Robinson's gross touring revenues.  During Podwall's negotiations with French, Podwall clearly indicated that he intended to commission Robinson's gross touring revenues, and never said that he was going to remove such language from the agreement.  Neither Robinson nor French objected to the proposed commissions on Robinson's touring revenue.  Neither French nor Robinson ever requested that Podwall remove such language. French, who was negotiating on Robinson's behalf, requested that Podwall make other modifications to the draft deal terms.  Podwall promptly made every change proposed by French/Robinson.

On or about September 10, 2012, Podwall, Robinson and French met at Robinson's home about the Management Agreement (the "September 2012 Meeting"). At the September 2012 Meeting, Podwall, Robinson and French reviewed the one-page Management Agreement. Following their review of the Management Agreement, neither Robinson nor French expressed any objection to the Management Agreement. At the September 2012 Meeting, Podwall and Robinson signed the Management Agreement.

These facts will be evidenced by testimony by Podwall, French and Robinson. They will also be evidence by the e-mails between French, Podwall and/or Robinson.

2. Podwall disputes that knew Robinson was allegedly mistaken and that Podwall used that alleged mistake to take advantage of him. Podwall will rely on the same evidence identified in opposition to element 1.

3. Podwall disputes that any alleged mistake was not caused by Robinson's excessive carelessness. Robinson was given the one-page Management Agreement to read, including immediately prior to his signature. Podwall will rely on the same evidence identified in opposition to element 1.

4. Plaintiff disputes that Robinson would not have agreed to enter into the contract if he had known about the alleged mistake. In particular, Robinson saw the substance of the final draft and signed it knowing that it obligated him to pay Podwall commissions on Robinson's gross touring revenue. Podwall intends to rely on the same evidence identified in opposition to element 1.

### 6.   **Accord and Satisfaction**

Defendant's Evidence

The evidence supporting this affirmative defense is summarized as follows: In 2013, Paul George ("George"), who works for Plaintiff's company Podwall Entertainment, sent an invoice on behalf of Plaintiff and/or his company to Defendant's business manager seeking commissions for certain live performances.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Defendant rejected this invoice as contrary to the parties' agreement.  Podwall did

2   not object and otherwise, through his statements and conduct, made it clear to

3   Robinson that Podwall agreed that he would only be entitled to commissions on

4   projects that Podwall generated and not live performances that he had nothing to do

5   with.  These facts will be established through the testimony of Robinson, Podwall,

6   Heller, Bryant, French and George, and e-mails, invoices and other documents

7   support this defense.

8        Plaintiff's Evidence

9        1.     Plaintiff disputes that there was a bona fide dispute between the parties

10   at the time in 2013.  Podwall will rely on evidence that after Robinson's obligation

11   to pay commissions on his touring/performance revenue began in June 2013, and

12   Robinson failed to make commission payments to Podwall, Podwall had numerous

13   conversations with Robinson about Robinson's non-payment between 2013 and

14   2016.  Podwall never told Robinson that he would not have to pay commissions.

15   Rather, throughout these multiple conversations with Robinson, Podwall clearly and

16   consistently notified Robinson that he owed commissions under the Management

17   Agreement on touring/live performances, and that Robinson needed to pay Podwall

18   those commissions.  In sum and substance, Podwall continued to remind Robinson

19   that he needed to pay Podwall commissions as required by the Management

20   Agreement, that his non-payment needed to be fixed, and that he owed a

21   commission on all of the live performances that took place since June 2013.  In sum

22   and substance, Robinson continued to make excuses and stated that he needed more

23   time to pay Podwall what was owed, and that he intended to do so.  These facts will

24   be evidenced by Podwall's testimony.

25        2.     Podwall disputes that Robinson tendered anything or made it clear that

26   acceptance of anything that was allegedly tendered was subject to the condition that

27   it was to be in full satisfaction of the Plaintiff's unliquidated claim.  First, Robinson

28   did not tender anything.  Moreover, Robinson never said that anything that was

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

tendered (whatever that might be) would satisfy any claim.  Podwall will rely on the same evidence identified in opposition to element 1.

Podwall will also rely on evidence that Podwall and George continued performing management services under the Management Agreement, and that Robinson was aware of such continued performance.  It was clear that Podwall (and George) were not working for free, and that Podwall expected to be compensated as required by the Management Agreement.  Such continued performance under the Management Agreement will be evidenced primarily by testimony by Podwall, George and Robinson.  Performance will also be evidence by several e-mails. Podwall will also rely on the language of the Management Agreement itself.

Plaintiff will also rely on Robinson's written termination notice of the Management Agreement.

3.     Podwall disputes that he clearly understood when accepting what was allegedly tendered (whatever that might be) that Robinson intended such remittance to constitute payment in full of the particular claim in issue.  Podwall will rely on the same evidence identified in opposition to elements 1 and 2.

### 7.     __Novation__

Defendant's Evidence

The evidence supporting this affirmative defense is summarized as follows: In 2013, Paul George ("George"), who works for Plaintiff's company Podwall Entertainment, sent an invoice on behalf of Plaintiff and/or his company to Defendant's business manager seeking commissions for certain live performances. Defendant rejected this invoice as contrary to the parties' agreement.  Podwall did not object and otherwise, through his statements and conduct, made it clear to Robinson that Podwall agreed that he would only be entitled to commissions on projects that Podwall generated and not live performances that he had nothing to do with.  These facts will be established through the testimony of Robinson, Podwall, Heller, Bryant, French and George, and e-mails, invoices and other documents

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

support this defense.

Plaintiff's Evidence

2.      Podwall disputes that all parties agreed, by words or contract, to cancel the original contract and to substitute a new contract in its place.  Rather, the Management Agreement remained in place through approximately March 2016.  Podwall will rely on evidence that after Robinson's obligation to pay commissions on his touring/performance revenue began in June 2013, and Robinson failed to make commission payments to Podwall, Podwall had numerous conversations with Robinson about Robinson's non-payment between 2013 and 2016.  Podwall never told Robinson that he would not have to pay commissions.  Rather, throughout these multiple conversations with Robinson, Podwall clearly and consistently notified Robinson that he owed commissions under the Management Agreement on touring/live performances, and that Robinson needed to pay Podwall those commissions.  In sum and substance, Podwall continued to remind Robinson that he needed to pay Podwall commissions as required by the Management Agreement, that his non-payment needed to be fixed, and that he owed a commission on all of the live performances that took place since June 2013.  In sum and substance, Robinson continued to make excuses and stated that he needed more time to pay Podwall what was owed, which, and that he intended to do so.  These facts will be evidenced by Podwall's testimony.

Podwall will also rely on evidence that Podwall and George continued performing management services under the Management Agreement, and that Robinson was aware of such continued performance.  It was clear that Podwall (and George) were not working for free, and that Podwall expected to be compensated as required by the Management Agreement.  Moreover, there was no material change in the management services that Podwall and George provided to Robinson.  Such continued performance under the Management Agreement will be evidenced primarily by testimony by Podwall, George and Robinson.  Performance will also be

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

27

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   evidence by several e-mails.  Podwall will also rely on the language of the

2   Management Agreement itself.

3         Plaintiff will also rely on Robinson's written termination notice of the

4   Management Agreement.

5           Third Parties

6         Pursuant to Local Rule 16-4.1(g), there are no statements to be made with

7   respect to third parties.

8   **G.**   **Evidentiary Issues**

9         Pursuant to Local Rule 16-4.1(h), the parties identify the following

10   anticipated evidentiary issues:

11         Plaintiff intends to rely on certain business records, in particular financial

12   ledgers and other financial documents, prepared by Defendant's accountant/book

13   keeper and his talent agency that both identify all of Defendant's live performances

14   during the relevant timeframe and Defendant's revenues from each of those

15   performances.  Plaintiff also intends to rely on Verve Records/UMG's business

16   records that reflect the amount of a certain advance that was paid to Defendant

17   during the relevant timeframe.  The parties are discussing a stipulation as to

18   admissibility and/or to certain facts reflected in those documents.

19         If the parties cannot reach such a stipulation, Plaintiff intends to file a motion

20   *in limine* to have those documents admitted into evidence as business records.

21         Defendant does not, at this time, envision evidentiary issues with the

22   presentation of its case in chief.

23   **H.**   **Issues of Law**

24         Pursuant to Local Rule 16-4.1(i), the parties identify the following anticipated

25   legal issue:

26   <u>Legal Issues Raised by Plaintiff</u>

27   / / /

28   / / /

1.   <u>Unclean Hands Defense</u>

Plaintiff is concerned that this defense is duplicative of Defendant's fraud defense.  Accordingly, the unclean hands defense seems redundant.  Notably, Defendant must identify "analogous case law" suggesting that the affirmative defense of unclean hands should be applied.  *Kendall-Jackson Winery, Ltd. v. Superior Court*,  76 Cal.App.4th 970, 979 (1999).  Again, it appears that Defendant is relying on common law fraud law to support this defense.

To the extent that Defendant is permitted to assert this equitable defense, Plaintiff contends that it should be decided by the Court, not the jury.  In particular, Plaintiff is concerned that there is likely to be jury confusion as to how to decide this issue, especially if the jury determines that Defendant's fraud defense is not meritorious.

2.   <u>Contract Ambiguity</u>.

Defendant apparently contends that a portion of Section 2 of the Management Agreement is susceptible to a different interpretation, and is ambiguous.  Under California law, the determination of whether a written contract is ambiguous is a question of law that must be decided by the court. *Airborne Freight Corp. v. McPherson*, 427 F.2d 1283, 1285 (9th Cir. 1970) (interpreting California law); *Parsons v. Bristol Development Co*., 62 Cal.2d 861, 865 (1965); *WYDA Associates v. Merner*, 42 Cal.App.4th 1702,1710 (1996).   "'When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citation.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence[citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] *Brown v. Goldstein*, 34 Cal.App.5th 418, 433 (2019).

<u>Legal Issues Raised by Defendant</u>

Defendant identifies the following issues of law:

/ / /

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1.      Whether to present the equitable affirmative defenses of estoppel, laches, unclean hands and unjust enrichment to the jury.  Under California law, the trial judge has discretion to do so.  *Unilogic, Inc. v. Burroughs Corp.,* 10 Cal. App. 4th 612, 622 (1992) ("the trial court has discretion whether to submit an equitable defense to the jury").  Defendant's position is that the Court should present these equitable defenses to the jury as they involve fact questions that are suitable for resolution by lay jurors and overlap with fact questions that must be presented to the jury.

## II.   BIFURCATION

Neither party requests bifurcation.

## III.   JURY TRIAL

The parties have requested a jury trial on Plaintiff's claims for breach of contract and quantum meruit, and both of those claims are actions at law that give rise to a right to a jury.  Defendant asserts legal and equitable affirmative defenses, which should be submitted to the jury.

## IV.   ATTORNEYS' FEES

Neither party is entitled to attorneys' fees.

## V.   ABANDONMENT OF ISSUES

Plaintiff has abandoned his claims for declaratory relief and accounting. Defendant has abandoned his affirmative defenses that are not set forth in this document or in the Final Pretrial Conference Order, except Defendant pled several affirmative defenses that are fact defenses on which Plaintiff has the burden of proof.  Defendant is not abandoning these fact defenses, which include Plaintiff's failure to perform, no damages, no meeting of the minds, no service to defendant, lack of acceptance, breach of contract by Plaintiff and Defendant did receive or accept services from Plaintiff.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   DATED:  January 14, 2022          FREEDMAN + TAITELMAN, LLP

2

3

4                                     By: _____/s/ Jesse A. Kaplan_____

5                                          JESSE A. KAPLAN
                                           Attorneys for ERIC PODWALL

6

7   DATED:  January 14, 2022          MILLER BARONDESS, LLP

8

9

10                                    By: _____/s/ A. Sasha Frid_____

11                                         A. SASHA FRID
                                           Attorneys for WILLIAM "SMOKEY"

12                                         ROBINSON, JR

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

## **SIGNATURE ATTESTATION**

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf this filing is jointly submitted, concur in this filing's content and have authorized me to file this document.


/s/ Jesse A. Kaplan
Jesse A. Kaplan

JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW