FILED
CLERK, U.S. DISTRICT COURT

8/14/23

CENTRAL DISTRICT OF CALIFORNIA
BY:        SE        DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Eric Podwall,

               Plaintiff,

         .v.

William Smokey Robinson, Jr.,

               Defendant.

Case No. CV 16-06088-ODW (AGRx)

JURY INSTRUCTIONS

# DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence and soon will hear the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

You will receive a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

550108.1

CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff Podwall asserts that defendant Robinson breached a certain agreement by failing to pay Plaintiff Podwall monies that Defendant Robinson owed. The plaintiff Podwall has the burden of proving these claims.

The defendant Robinson denies those claims and also presents the affirmative defenses of waiver, estoppel, and unilateral mistake. The defendant Robinson has the burden of proof on these affirmative defenses.

The plaintiff Podwall denies defendant's affirmative defenses.

BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

Now when a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means that you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which side presented it.

1

BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

2

3       When a party has the burden of proving any claim or defense by clear and
4   convincing evidence, it means that the party must present evidence that leaves you
5   with a firm belief or conviction that it is highly probable that the factual contentions
6   of the claim or defense are true. This is a higher standard of proof than proof by a
7   preponderance of the evidence, but it does not require proof beyond a reasonable
8   doubt.

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I have instructed you to accept as proved.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, and will say in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the federal rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence may have been received only for a limited purpose; if I instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## RULING ON OBJECTIONS

There are federal rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted under the federal rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the evidence stricken for any purpose.

# CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1    The weight of the evidence as to a fact does not necessarily depend on the

2   number of witnesses who testify. What is important is how believable the witnesses

3   were, and how much weight you think their testimony deserves.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## STIPULATIONS OF FACT

2

3      The parties have agreed to certain facts in evidence attached to these
4   instructions as Exhibit A. You must therefore treat these facts as having been proved.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

1

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

2

3          Certain charts and summaries not admitted into evidence have been shown to

4   you in order to help explain the contents of books, records, documents, or other

5   evidence in the case. Charts and summaries are only as good as the underlying

6   evidence that supports them. You should, therefore, give them only such weight as

7   you think the underlying evidence deserves.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | BREACH OF CONTRACT—INTRODUCTION
2 |
3 |     Plaintiff Podwall claims that he and Defendant Robinson entered into a contract
4 | for certain management services.
5 |     Plaintiff Podwall claims that Defendant Robinson breached this contract by
6 | failing to pay Plaintiff Podwall as required by the contract.
7 |     Plaintiff Podwall also claims that Defendant Robinson's breach of this contract
8 | caused harm to Plaintiff Podwall for which Defendant Robinson should pay.
9 |     Defendant Robinson denies Plaintiff Podwall's claims. Defendant Robinson
10 | also claims that Podwall's breach of contract claim is barred in whole or in part by
11 | the following affirmative defenses:  mistake, waiver and estoppel.

BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages from defendant Robinson for breach of contract, plaintiff Podwall must prove all of the following:

1. That plaintiff Podwall and defendant Robinson entered into a contract;

2. That plaintiff Podwall did all, or substantially all, of the significant things that the contract required him to do, or that plaintiff Podwall was excused from doing some or all of those things;

3. That defendant Robinson failed to do something that the contract required him to do;

4. That plaintiff Podwall was harmed; and

5. That defendant Robinson's breach of contract was a substantial factor in causing Podwall's harm.

## SUBSTANTIAL PERFORMANCE

Defendant Robinson contends that Plaintiff Podwall did not perform all of the things that Podwall was required to do under the contract, and therefore Robinson did not have to perform his obligations under the contract.  To overcome this contention, Podwall must prove both of the following:

1.      That Podwall made a good faith effort to comply with the contract; and

2.      That Robinson received essentially what the contract called for because Podwall's failures, if any, were so trivial or unimportant that they could have been easily fixed or paid for.

## INTERPRETATION – DISPUTED WORDS

Plaintiff Podwall and Defendant Robinson dispute the meaning of the following words in their contract: "Ten percent of gross compensation derived from all products of your services initially rendered or created from and after the date you send the email response agreeing to this deal, except, I will not be entitled to commission on any live performance ticket sales for engagements booked prior to the date of this agreement, nor any other live engagements performed prior to June 1, 2013 unless you and I agree otherwise."

Plaintiff Podwall claims that the words mean that Defendant Robinson owes commissions on, among other things, live performances performed on June 1, 2013 through the term of the contract until terminated. Defendant Robinson claims that the words mean that Plaintiff Podwall is only entitled to commissions on projects or opportunities that Podwall brings to Robinson. Plaintiff Podwall must prove that his interpretation is correct.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

INTERPRETATION—MEANING OF ORDINARY WORDS

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

## INTERPRETATION – CONSTRUCTION BY CONDUCT

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

## INTERPRETATION—REASONABLE TIME

If a contract does not state a specific time in which the parties are to meet the requirements of the contract, then the parties must meet them within a reasonable time. What is a reasonable time depends on the facts of each case, including the subject matter of the contract, the reasons each party entered into the contract, and the intentions of the parties at the time they entered the contract.

## INTERPRETATION – CONSTRUCTION AGAINST DRAFTER

In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against the party that drafted the disputed words or caused the uncertainty.

## AFFIRMATIVE DEFENSE - WAIVER

Defendant Robinson claims that he did not have to pay commissions on his live performances because Plaintiff Podwall gave up his right to have Robinson perform this obligation.  This is called a "waiver."

To succeed, Robinson must prove both of the following by clear and convincing evidence:

1.     That Podwall knew Robinson was required to pay commissions on Robinson's live performances; and

2.     That Podwall freely and knowingly gave up his right to have Robinson perform this obligation.

A waiver may be oral or written or may arise from conduct that shows that Podwall gave up that right.

If Robinson proves that Podwall gave up his right to Robinson's performance of his contractual obligation to pay commissions on live performances, then Robinson was not required to perform this obligation.

## ESTOPPEL

Defendant Robinson claims that Plaintiff Podwall's breach of contract and quantum meruit claims are barred by the affirmative defense of estoppel. To establish this defense, Robinson must prove the following:

1. Podwall knew Robinson was required to pay commissions on live performances under the contract and that Podwall intended to preserve his right to collect such commissions from Robinson;

2. Podwall intended that his conduct would be acted upon by Robinson, or that Podwall acted so that Robinson had the right to believe that it was so intended. In particular, that Podwall caused Robinson to believe Robinson would not be required to pay commissions on live performances that Podwall did not procure or otherwise generate for Robinson;

3. Robinson did not know that Podwall intended to preserve his right to collect commissions on Robinson's live performances; and

4. Defendant Robinson relied upon Podwall's conduct to his injury.

## UNILATERAL MISTAKE

Defendant Robinson claims that there was no contract because he was mistaken about whether the written contract had been changed to state that Podwall would not be entitled to collect commissions on Robinson's live performances that Podwall did not procure or otherwise generate for Robinson. To succeed, Robinson must prove all of the following:

1.   That Robinson was mistaken about whether before he signed the contract, the contract had been changed to state that Podwall would not be entitled to collect commissions on Robinson's live performances that Podwall did not procure or otherwise generate for Robinson;

2.   That Podwall knew Robinson was mistaken and used that mistake to take advantage of him;

3.   That Robinson's mistake was not caused by his excessive carelessness; and

4.   That Robinson would not have agreed to enter into the contract if he had known about the mistake.

If you decide that Robinson has proved all of the above, then no contract was created.

## INTRODUCTION TO CONTRACT DAMAGES

If you decide that plaintiff Podwall has proved his claim against defendant Robinson for breach of contract, you also must decide how much money will reasonably compensate plaintiff Podwall for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put plaintiff Podwall in as good a position as he would have been if defendant Robinson had performed as promised.

To recover damages for any harm, plaintiff Podwall must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

Plaintiff Podwall also must prove the amount of his damages according to the following instructions. He does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Plaintiff Podwall claims damages in the amount equal to what defendant Robinson failed to pay Podwall under the contract.

1    OBLIGATION TO PAY MONEY ONLY

2

3        To recover damages for the breach of a contract to pay money, plaintiff Podwall

4    must prove the amount due under the contract.

COMMON COUNT: GOODS AND SERVICES RENDERED

Plaintiff Podwall claims that defendant Robinson owes him money for services rendered. To establish this claim plaintiff Podwall must prove all of the following:

1. That defendant Robinson requested, by words or conduct, that plaintiff Podwall perform services for the benefit of defendant Robinson;

2. That plaintiff Podwall performed the services as requested;

3. That defendant Robinson has not paid plaintiff Podwall for all of the services; and

4. The reasonable value of the services that were provided.

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury here in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

CONSIDERATION OF EVIDENCE - CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any other internet chat room, blog website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth,

and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.   Remember, you have taken an oath to follow the rules, and it is very important that these rules be followed.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

## COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court security officer, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

# EXHIBIT A

## STIPULATED FACTS

The following facts are admitted and require no proof:

a)      Podwall is a manager whose clients include entertainers, musicians, actors and artists.

b)      In September 2014, Robinson was paid a $20,000 advance from Verve Records pursuant to a recording agreement with Verve Records dated March 2013.

c)      Between approximately June 2013 and January 16, 2016, Robinson performed at the following venues on the following dates and earned the following gross revenue from each performance:

| Date | City | Venue | Robinson's Gross Revenue |
|---|---|---|---|
| 6/21/2013 | Toronto, ON | Star Stage | $100,000.00 |
| 6/22/2013 | Okmulgee, OK | Claude Cox Omniplex | $80,000.00 |
| 6/27/2013 | Saratoga, CA | The Mountain Winery | $85,000.00 |
| 6/29/2013 | Las Vegas, NV | Venetian Showroom | $90,000.00 |
| 7/12/2013 | Temecula, CA | Pechanga Resort & Casino | $80,000.00 |
| 7/17/2013 | Hammond, IN | Wolf Lake Memorial Park | $85,000.00 |
| 7/18/2013 | Sloan, IA | Winnavegas Casino | $85,000.00 |
| 7/20/2013 | San Ramon, CA | Dougherty Valler PAC | $40,000.00 |
| 7/21/2013 | Vacaville, CA | Vacaville PAC | $40,000.00 |
| 7/25/2013 | Coney Island, NY | Seaside Summer Concert Series | $80,000.00 |
| 7/26/2013 | Niagara Falls, NY | Seneca Niagara Casino | $100,000.00 |
| 8/23-24/2013 | Baton Rouge, LA | L'Auberge Baton Rouge Casino | $200,000.00 |
| 8/28/2013 | Grand Rapids, MI | Meijer Gardens Amphitheater | $80,000.00 |
| 8/29/2013 | Sterling Heights, MI | Freedom Hill Amphitheatre | $100,000.00 |
| 8/31/2013 | Carmel, IN | The Palladium | $80,000.00 |
| 9/15/2013 | Yonkers, NY | Yonkers Raceway | $85,000.00 |
| 9/19/2013 | Chicago, IL | Jones Convocation Center | $100,000.00 |
| 9/28/2013 | Florence, IN | Belterra Resort & Casino | $85,000.00 |
| 10/11/2013 | Newark, NJ | NJ PAC - Prudential Hall | $80,000.00 |
| 10/18/2013 | Cerritos, CA | Cerritos PAC | $83,178.25 |

| Date | City | Venue | Robinson's Gross Revenue |
|---|---|---|---|
| 10/19/2013 | Pasadena, CA | Pasadena Convention Center | $90,000.00 |
| 11/7/2013 | Highland, CA | San Manuel Indian Bingo & Casino | $80,000.00 |
| 11/9/2013 | Las Vegas, NV | The Eastside Cannery Casino | $82,500.00 |
| 11/22/2013 | Durant, OK | Choctaw Events Center | $85,000.00 |
| 11/24/2013 | Lake Buena Vista, FL | Disney | $100,000.00 |
| 11/30/2013 | Laughlin, NV | Edgewater Casino Resort | $95,000.00 |
| 12/14/2013 | Chicago, IL | Arie Crown Theater | $115,000.00 |
| 12/27/2013 | Bethlehem, PA | Sands Bethlehem Event Center | $100,000.00 |
| 12/29/2013 | Tunica, MS | Harrah's | $100,000.00 |
| 1/16/2014 | Windsor, ON | The Colosseum at Caesars Windsor | $85,000.00 |
| 2/15/2014 | Primm, NV | Buffalo Bill's Resort & Casino | $100,000.00 |
| 2/21/2014 | Tacoma, WA | Emerald Queen Casino | $100,000.00 |
| 3/8/2014 | Phoenix, AZ | Arizona Grand Resort | $100,000.00 |
| 3/14/2014 | Anniston, AL | Anniston PAC | $80,000.00 |
| 3/15/2014 | West Palm Beach, FL | Kravis Center PAC | $80,000.00 |
| 3/16/2014 | Miami, FL | Adrienne Arsht PAC | $77,500.00 |
| 3/28/2014 | Newkirk, OK | First Council Casino | $80,000.00 |
| 3/31/2014 | Dallas, TX | Meyerson Symphony Center | $110,000.00 |
| 5/16/2014 | Cabazon, CA | Morongo Casino Resort & Spa | $85,000.00 |
| 5/24/2014 | Atlantic City, NJ | Harrah's | $100,000.00 |
| 6/4/2014 | Bethesda, MD | Music Center at Strathmore | $80,000.00 |
| 6/6/2014 | New York, NY | Beacon Theater | $103,074.56 |
| 6/7/2014 | Mashantucket, CT | Foxwoods | $80,000.00 |
| 6/20/2014 | Del Mar, CA | San Diego County Fair | $80,000.00 |
| 6/21/2014 | Valley Center, CA | Harrah's Rincon | $80,000.00 |
| 6/22/2014 | San Francisco, CA | Sigmund Stern Grove | $100,000.00 |
| 6/28/2014 | Tucson, AZ | Ava Amphitheater | $85,000.00 |
| 6/29/2014 | Littleton, CO | The Hudson Gardens & | $85,000.00 |

| Date | City | Venue | Robinson's Gross Revenue |
|---|---|---|---|
| | | Event Center | |
| 7/25/2014 | Niagara Fallas, ON | Seneca Niagara Casino | $100.000.00 |
| 8/1/2014 | Rama, ON | Casino Rama | $80.000.00 |
| 8/6/2014 | Albuquerque, NM | Sandia Resort & Casino | $90.000.00 |
| 8/8/2014 | Toledo, OH | Hollywood Casino | $90.000.00 |
| 8/9/2014 | Milwaukee, WI | Riverside Theater | $80.000.00 |
| 8/16/2014 | Los Angeles, CA | Greek Theater | $125.000.00 |
| 8/20/2014 | San Antonio, TX | Majestic Theater | $82.177.00 |
| 8/22/2014 | Biloxi, MS | IP Casino Resort & Spa | $80.000.00 |
| 8/23/2014 | Montgomery, AL | Alabama Shakespeare Festival Theatre | $85.000.00 |
| 8/29/2014 | Willemstad, Curacao | North Sea Jazz Fest | $150.000.00 |
| 9/6/2014 | Meadowlands, PA | Meadows Racetrack & Casino | $90.000.00 |
| 9/20/2014 | Newport Beach, CA | Lido Theater | $100.000.00 |
| 10/3/2014 | Waukegan, IL | Genesee Theater | $90.000.00 |
| 10/4/2014 | Prior Lake, MN | Mystic Lake Casino | $90.000.00 |
| 10/17/2014 | Temecula, CA | Pechanga Resort & Casino | $80.000.00 |
| 10/18/2014 | Las Vegas, NV | The Eastside Cannery Casino | $85.000.00 |
| 10/23/2014 | Virginia Beach, VA | Sandler Center | $80.000.00 |
| 10/24/2014 | Morristown, NJ | Mayo PAC | $85.000.00 |
| 10/25/2014 | Bethlehem, PA | Zoellner Arts Center | $100.000.00 |
| 12/11/2014 | Brooklyn, NY | Barclays Theater | $100.000.00 |
| 12/12/2014 | Baltimore, MD | The Lyric | $80.000.00 |
| 12/13/2014 | King of Prussia, PA | Valley Forge Casino Resort | $85.000.00 |
| 1/8-9/2015 | Niagara Falls, ON | Fallsview Casino | $170.000.00 |
| 1/17/2015 | Indio, CA | Fanstas Springs Resort | $100.000.00 |
| 2/11/2015 | Calgary, AB | Grey Eagle Resort | $80.000.00 |
| 2/13/2015 | Richmond, BC | River Rock Casino | $80.000.00 |
| 2/14/2015 | Portland, OR | Arlene Schnitzer Concert Hall | $80.000.00 |
| 3/6/2015 | Tacoma, WA | Emerald Queen Casino | $100.000.00 |

| Date | City | Venue | Robinson's Gross Revenue |
|---|---|---|---|
| 4/8/2015 | Austin, TX | Paramount Theater | $80,000.00 |
| 4/10/2015 | Bossier City, LA | Riverdome | $85,000.00 |
| 4/12/2015 | St. Petersburg, FL | Mahaffey Theater | $80,000.00 |
| 4/14/2015 | Ft. Myers, FL | Barbara B. Mann PAC | $80,000.00 |
| 4/16/2015 | Fayetteville, NC | Crown Theater | $80,000.00 |
| 4/18/2015 | Columbus, OH | Ohio Theater | $80,000.00 |
| 4/21/2015 | Cozumel, Mexico | Carnival Cruise Lines | $83,500.00 |
| 4/22/2015 | Cozumel, Mexico | Carnival Cruise Lines | $83,500.00 |
| 4/23/2015 | Miami, FL | Carnival Cruise Lines | $83,500.00 |
| 5/16/2015 | Atlantic City, NJ | Caesars AC | $100,000.00 |
| 5/29/2015 | New Buffalo, MI | Four Winds Casino Resort | $85,000.00 |
| 6/20/2015 | Quapaw, OK | Downstream Casino Resort | $100,000.00 |
| 6/27/2015 | Laytonville, CA | Black Oak Ranch | $110,000.00 |
| 7/2-4/2015 | Hollywood, CA | Hollywood Bowl | $300,000.00 |
| 7/9/2015 | Pittsburgh, PA | Heinz Hall | $100,000.00 |
| 7/11/2015 | Park City, UT | Snow Park Outdoor Amp | $85,000.00 |
| 7/25/2015 | Hollywood, FL | Seminole Hard Rock Casino | $105,000.00 |
| 9/3/2015 | Livermore, CA | Wente Vineyards | $100,000.00 |
| 9/4/2015 | Rohnert Park, CA | Sonoma State University | $100,000.00 |
| 9/18/2015 | Sahuarita, AZ | Desert Diamond Casino | $100,000.00 |
| 10/9/2015 | Bethlehem, PA | Sands Bethlehem Event Center | $100,000.00 |
| 10/10/2015 | Ridgefield, CT | The Ridgefield Playhouse | $100,000.00 |
| 10/11/2015 | Westbury, NY | Theater at Westbury | $100,000.00 |
| 11/13/2015 | Thackerville, OK | Winstar World Casino | $100,000.00 |
| 12/10-11/2015 | Nashville, TN | Schermerhorn Center | $200,000.00 |
| 1/16/2016 | Enoch, AB | River Cree Resort & Casino | $100,000.00 |
| | | **TOTAL** | **$9,653,929.81** |

d)      Robinson paid Podwall a $10,000 commission on Robinson's earnings from the show at the Barclays Theater.